STANLEY V. TUCKER v. JOSEPH R. ALLEYNE ET AL.
(12171)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued January 11—decision released March 5, 1985

---

*Stanley V. Tucker,* pro se, the appellant (plaintiff).

*Evans Jacobs, Jr.,* with whom, on the brief, were *Richard H. Goldstein,* corporation counsel, and *Paula Zeiner,* for the appellees (defendants).

PETERS, C. J. The principal issue in this case is whether a landlord whose tenants are the recipients of city welfare has been unconstitutionally deprived of direct rental payments by the city's department of social services. The plaintiff, Stanley V. Tucker, brought an action in three counts against the named defendant and two others[1] alleging violation of his civil rights, of the Connecticut Anti-Trust Act, and of the Connecticut Freedom of Information Act. The trial court, after having heard the parties, rendered a judgment for the defendants. The plaintiff appeals the judgment wih respect to the first two counts only. We find no error.

The trial court found that the plaintiff had rented apartments to welfare clients of the city of Hartford, and that rentals for some of these apartments had not been paid the plaintiff. The plaintiff had thereupon requested direct payment orders from the Hartford department of social services. It was the policy of the department to encourage welfare clients to make their

---

[1] The defendants are Joseph R. Alleyne, individually and as director of the department of social services of the city of Hartford, June Danaher, individually and as a social worker for the city of Hartford, and Arthur Teal, individually and as director of the department of social services of the city of Hartford. Teal succeeded Alleyne in the directorship of the department of social services during the pendency of this case.

own budgetary determinations and therefore the city did not make direct rental payments to any landlord unless it had been proven in a particular case that the client was incapable of handling his or her own financial affairs.[2] The city's social workers, with whom the plaintiff had been in contact, had not entered into any agreements with him in derogation of this policy, and would not have had the authority to do so.

The trial court further found that the result of the department's policy was that orders for the direct payment of rentals were rarely authorized for any landlord. The department has not treated the plaintiff any differently from other Hartford landlords in its issuance of such orders. The defendant Joseph R. Alleyne, then director of the department, did write the plaintiff on November 24, 1975, that the department thereafter would, "under no circumstances, pay rent directly to you on behalf of any active recipients of this department." This letter, however, occasioned no change in fact in the department's policy or procedures with regard to the plaintiff, who received rent orders in 1974, in 1975 and in subsequent years up through the time of trial in 1983.

The plaintiff raises a number of issues in his appeal. With respect to the first count of his complaint, he claims that the trial court erred in failing to find, as a fact, that he had been the victim of disparate treatment by the defendants, and in failing to conclude as a matter of law that he had been deprived of his federal rights to equal protection of the laws. With respect to the second count, he claims that the trial court erred in not finding that the defendants had conspired to

---

[2] Evidence was adduced at trial that direct rental payments were also made in emergencies.

refuse to deal with him, in violation of the Connecticut Anti-Trust Act, General Statutes § 35-28 (d).[3]

The plaintiff's constitutional claims under the first count of his complaint, which he there denominated a civil rights complaint for denial of equal rights, require him to prove that the defendants' procedures and policies bear "no reasonable relationship to any legitimate [governmental] purpose; *Caldor's, Inc.* v. *Bedding Barn, Inc.,* [177 Conn. 304,] 314–15, [417 A.2d 343 (1979)]; *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957); and that the plaintiff . . . has suffered a specific injury as a result of the policy's enforcement. *Gentile* v. *Altermatt,* 169 Conn. 267, 307, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976); *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 471, 217 A.2d 698 (1966)." *Campbell* v. *Board of Education,* 193 Conn. 93, 105–106, 475 A.2d 289 (1984). Although the plaintiff asserts in his brief that his equal protection claim implicates a fundamental right, and thus requires strict scrutiny to determine whether the applicable regulations were compellingly justified and narrowly drafted; *Campbell* v. *Board of Education,* supra, 104; he has provided no basis for analyzing his case on anything other than the usual rational basis test.

---

[3] The plaintiff also claims, on appeal, that the defendant's conduct violated his constitutional right, under article 1, § 10, of the United States constitution, against impairment of the obligation of contracts. The plaintiff maintains that the defendants were obligated to recognize assignments of welfare payments contained in the leases of his tenants. Since this claim was not "distinctly raised at the trial"; Practice Book § 3063; we decline to consider it. The plaintiff has suggested no exceptional circumstances to warrant departure from the general rule that limits appellate review of all issues, even constitutional issues, to those upon which the trial court has had an opportunity to rule. *Knight* v. *Bourbeau,* 194 Conn. 702, 704 and n.3, 485 A.2d 919 (1984); *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973).

The plaintiff acknowledged, at oral argument, that his complaint contained no claim of violation of his constitutional right to due process.

The plaintiff does not seriously contest the reasonableness of the defendants' policy of permitting welfare recipients to manage their own finances. The gravamen of his claim is, as his complaint indicates, that the defendants improperly refused "to disburse welfare funds to Plaintiff alone." The plaintiff asserts that the trial court's factual finding to the contrary is not supported by the evidence. While the letter from the defendant Alleyne lends some credence to the plaintiff's position, the plaintiff himself testified that he received rent orders in 1975 and in the years following. The trial court was entitled to believe that these rent orders were not, as the plaintiff maintained, aberrant determinations by social workers unaware of the Alleyne letter, but rather the result of an even-handed implementation of regular departmental policy. The small number of direct rental orders reflected, according to the testimony of John Cosker, a Hartford caseworker supervisor at the relevant times, that it was "a rare thing" for rent orders to be issued to any landlord. Cosker also testified that the Alleyne letter resulted in no change in the standard operating procedures applicable to the plaintiff's requests. In light of this evidence, the trial court's finding that there was no difference between the treatment afforded to the plaintiff's requests for direct rental orders and to those of other Hartford landlords was not clearly erroneous. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221-22, 435 A.2d 24 (1980).

Since the plaintiff has failed to establish that he has suffered a specific injury as a result of the enforcement of the defendants' policy, his constitutional claim under count one of his complaint must fail. For the same reason, he has not proven a violation of the Civil Rights Act, 42 U.S.C. § 1983.[4]

---

[4] "[42 U.S.C.] § 1983. CIVIL ACTION FOR DEPRIVATION OF RIGHTS
"Every person who, under color of any statute, ordinance, regulation,

The plaintiff's claim of an antitrust violation under General Statutes § 35-28 (d)[5] is equally defeated by the trial court's adverse factual findings. The plaintiff must prove, in order to prevail under this statute, that he has been injured as a result of a "contract, combination, or conspiracy" resulting in a "refus[al] to deal." The trial court found that "[t]here were no contracts, no combinations, no conspiracies with anyone, and particularly there were no agreements with any vendors, including landlords, in the city of Hartford, during the relevant period" that would have worked to the benefit of other landlords or to the particular detriment of the plaintiff. It had found earlier, as noted above, that the only refusals to deal with the plaintiff were those that arose out of the city's over-all policy against direct rental payment orders. In addition, the court found that the plaintiff had failed to establish his compliance with the provisions of General Statutes § 35-37 requiring "[a]ny person filing a complaint . . . for any violation of . . . [the Anti-Trust Act] simultaneously with the returning of the same to superior court . . . [to] mail a copy of the complaint . . . to the attorney gen-

custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[5] "[General Statutes] Sec. 35-28. ACTS UNLAWFUL WHEN PURPOSE OR EFFECT IS RESTRAINT OF TRADE OR COMMERCE. Without limiting section 35-26, every contract, combination, or conspiracy is unlawful when the same are for the purpose, or have the effect, of: (a) Fixing, controlling, or maintaining prices, rates, quotations, or fees in any part of trade or commerce; (b) fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, mining, sale, or supply of any part of trade or commerce; (c) allocating or dividing customers or markets, either functional or geographical, in any part of trade or commerce; or (d) refusing to deal, or coercing, persuading, or inducing third parties to refuse to deal with another person."

eral." The plaintiff, in his appeal, has not challenged either the first or the third of these findings. We have already concluded that there was sufficient evidence so that the second finding was not clearly erroneous. The plaintiff has therefore not established his right to recover under General Statutes § 35-28 (d).

There is no error.

In this opinion the other judges concurred.