FELTON J. ROGERS *v.* COMMISSION ON HUMAN
RIGHTS AND OPPORTUNITIES ET AL.
(12453)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued February 5—decision released March 26, 1985

*Donald C. Pogue,* with whom were *Daniel E. Livingston* and, on the brief, *Marcia A. Winn,* for the appellant (plaintiff).

*Brian J. Comerford,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Robert E. Walsh,* assistant attorney general, for the appellee (named defendant).

*Albert Zakarian,* with whom, on the brief, was *James Sicilian,* for the appellee (defendant United Technologies Corporation).

PETERS, C. J. The principal issue on this appeal is the adequacy of notice given by certified mail. The plaintiff, Felton J. Rogers, filed a complaint with the commission on human rights and opportunities (CHRO) in which he charged his former employer with racial discrimination. CHRO dismissed the complaint and the plaintiff sought judicial review of this dismissal in Superior Court. The trial court dismissed the plaintiff's petition for review and the plaintiff appealed. We find no error.

The facts underlying this appeal are as follows. On May 28, 1981, the plaintiff, a black man, was given notice that he was to be laid off from his position as senior research technician at United Technologies Cor-

poration.[1] He promptly filed a complaint with the United States department of labor office of federal contract compliance, alleging that the layoff was racially motivated. The complaint was referred to the equal employment opportunity commission (EEOC), which in turn notified CHRO of the matter.[2] The plaintiff accordingly contacted CHRO and requested an appointment to file a formal complaint with that agency. See General Statutes § 46a-82 (a).[3] Although an appointment was initially scheduled for July 16, 1981, the plaintiff's complaint was not filed with CHRO until December 22, 1981.[4]

On February 25, 1982, CHRO dismissed the plaintiff's complaint because, according to the agency, it had been filed more than 180 days from the date of the alleged discrimination. See General Statutes § 46a-82 (e).[5] CHRO gave notice of the dismissal to the plaintiff that same day by mailing to his home address

---

[1] The layoff took effect sometime between May 28, 1981, and July 10, 1981, when the plaintiff received his last paycheck from United Technologies.

[2] The nature of this notification is described in footnote 8, infra.

[3] "[General Statutes] Sec. 46a-82. (Formerly Sec. 31-127). COMPLAINT: FILING. (a) Any person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a-68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission."

[4] The administrative record contains a series of letters from CHRO to the plaintiff, notifying him that the appointment had been postponed, first to July 21, 1981, then to August 3, 1981, and finally to August 11, 1981. On September 15, 1981, the plaintiff was informed that the dates of September 21, 1981, and September 28, 1981, were available. The plaintiff alleges that CHRO was responsible for at least one of these postponements. However, the administrative record also includes a CHRO inquiry report form that lists the July and August appointment dates and contains the entry "no show" in the space provided for appointment data.

[5] General Statutes § 46a-82 (e) provides in relevant part: "Any complaint filed pursuant to this section must be filed within one hundred and eighty days after the alleged act of discrimination . . . ."

a certified letter, delivery restricted.[6] Delivery of the letter was attempted without success on February 27, 1982, and then again on March 4, 1982. Notices of the attempted delivery and instructions to claim the letter from the postal service were left in the plaintiff's mail box, but the plaintiff did not claim the letter and it was ultimately returned to CHRO.

On June 18, 1982, the plaintiff requested that CHRO reconsider its dismissal of his complaint. This request was denied on August 26, 1982, as having been untimely filed.[7] The plaintiff filed a second request for reconsideration on August 31, 1982, enclosing evidence that he claimed proved that CHRO had been informed of his complaint well within the 180 day deadline.[8] On March 10, 1983, CHRO denied this request. The plaintiff filed a petition for review of the agency's action in the Superior Court on April 12, 1983. On January 23, 1984, the trial court dismissed the petition as having been untimely filed.

The plaintiff raises a number of issues on appeal. In essence, his claims of error are that: (1) the notice given him by CHRO of the dismissal of his complaint was inadequate and (2) the dismissal of his petition for review as untimely was erroneous.

## I

The plaintiff contends that CHRO's notice given of the dismissal of his complaint was deficient in two

---

[6] Restricted delivery allows delivery to the addressee only. See p. 547, infra.

[7] CHRO regulations provide that such a request "shall be in writing, stating specifically the grounds upon which it is based, and shall be filed within seven days from the date of the notice of dismissal . . . ." Regs., Conn. State Agencies § 31-125-12.

[8] This evidence consisted of a form, dated July 27, 1981, sent from EEOC to CHRO concerning the plaintiff's complaint against United Technologies. The form was stamped received by CHRO on July 30, 1981. It was titled "Charge Transmittal," but stated that "this charge is to be initially processed by the EEOC."

respects. First, he claims that the notice did not satisfy statutory requirements. Second, he challenges the constitutionality of these requirements. We are persuaded by neither claim.

The right to appeal from an administrative decision is triggered by the "mailing of . . . notice of the final decision of the agency." General Statutes § 4-183 (b); see *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 586, 418 A.2d 939 (1979). CHRO regulations provide that if the agency summarily dismisses a complaint "the complainant shall be notified thereof by registered mail." Regs., Conn. State Agencies § 31-125-11. The plaintiff admits that notice of the dismissal was mailed to him, but notes that it was sent by certified mail, restricted delivery, rather than by registered mail. This deviation, he claims, renders the notice statutorily invalid. We do not agree.

In the context of this case, the difference between certified and registered mail is without significance. The parties stipulated that, though an item can be insured only if sent by registered mail, delivery of certified and registered mail is accomplished by identical means. The method used in sending the February 25, 1982 letter thus varied from the regulatory standard only in the use of restricted delivery. A nonrestricted delivery of certified or registered mail may be made to any member of the addressee's household. Restricted delivery, however, allows delivery only to the addressee. The plaintiff has no cause for complaint when CHRO used a method of delivery that is more accurate than was required. The notice he received met the statutory and regulatory requirements.

The plaintiff's constitutional challenge to the notice given him is based on the eventual return of the February 25, 1982 letter to CHRO. This, the plaintiff contends, proves that CHRO knew he had not received

notice of the dismissal and imposed on the agency a duty to make further attempts to notify him. He concludes that in these circumstances, CHRO's reliance on the statutory method of notice violated his constitutional rights to due process and equal protection of the laws.

The plaintiff's due process claim is factually undermined by his admission that he received actual notice of the attempted deliveries of the February 25, 1982 letter and by his failure thereafter to claim the letter. The plaintiff's own inaction in response to actual notice cannot be made the basis of a claim that he was not afforded due process. As the United States Supreme Court recently explained, there is no absolute due process right that "entitles every civil litigant to a hearing on the merits in every case. The State may erect reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitations, cf. *Chase Securities Corp.* v. *Donaldson,* 325 U.S. [304,] 314–316, 65 S. Ct. [1137,] 1142–1143, [89 L. Ed. 1628, reh. denied, 325 U.S. 896, 65 S. Ct. 1561, 89 L. Ed. 2006 (1945)], or, in an appropriate case, filing fees. *United States* v. *Kras,* 409 U.S. 434 [93 S. Ct. 631, 34 L. Ed. 2d 626] (1973). And the State certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule." (Emphasis in original.) *Logan* v. *Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). The plaintiff's claim was terminated for failure to comply with the instructions he received at his home to collect an important document from the postal service. We cannot say that it is an unreasonable procedural rule to condition the right to a judicial hearing on such a requirement.

This conclusion is in accord with basic due process doctrine. "A fundamental requirement of due process is 'the opportunity to be heard.' *Grannis* v. *Ordean,*

234 U.S. 385, 394 [34 S. Ct. 779, 58 L. Ed. 1363 (1914)]. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo,* 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965); see *Mullane* v. *Central Hanover Trust Co.,* 339 U.S. 306, 314–15, 70 S. Ct. 652, 94 L. Ed. 865 (1950). The plaintiff was given a meaningful opportunity to be heard when he received notice of the attempted deliveries of the February 25, 1982 letter in his mail box. That the plaintiff did not avail himself of this opportunity until the time for presenting his case had passed is unfortunate, but it does not render the use of the mails in giving notice unconstitutional.

The plaintiff's equal protection claim is equally unfounded. As the plaintiff offers no basis for applying strict scrutiny to the method of notice employed by CHRO, we must analyze his claim under the rational basis test.[9] See *Tucker* v. *Alleyne,* 195 Conn. 399, 402, 488 A.2d 452 (1985). CHRO's use of certified or registered mail to inform complainants of the dismissal of their claims is rationally related to the agency's legitimate interest in expeditious and accurate notification of those affected by its decisions. The facts of this case in no way refute the reasonableness of CHRO's reliance on this mode of giving notice. In sum, the plaintiff received adequate notice of the dismissal of his complaint.[10]

---

[9] The plaintiff's equal protection claim is based on a challenge to the practice of giving notice by certified mail. In his main brief, the plaintiff contrasts this practice with that of giving notice by registered mail. In his reply brief, the proffered distinction is between constructive notice by mail and actual notice. Our discussion of the plaintiff's claim applies to either variation on the basic theme.

[10] Our rejection of the plaintiff's claims should not be read as an endorsement of agency inaction. If the plaintiff's petition for review had been timely filed, and if he could have shown that CHRO was responsible for delaying the filing of his complaint beyond the 180 day deadline, he would have had a colorable claim for a judicial remedy. See *Logan* v. *Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982).

## II

The adequacy of the notice given the plaintiff requires affirmance of the trial court's dismissal of his petition for review. The principles governing administrative appeals are well settled. There is no inherent constitutional right to judicial review of administrative decisionmaking. See *Ortwein* v. *Schwab,* 410 U.S. 656, 659–61, 93 S. Ct. 1172, 35 L. Ed. 2d 572, reh. denied, 411 U.S. 922, 93 S. Ct. 1551, 36 L. Ed. 2d 315 (1973); *Neyland* v. *Board of Education,* 195 Conn. 174, 183, 487 A.2d 181 (1985). The right to appeal to the courts from the decision of an administrative agency exists only if given by statute; *Old Rock Road Corporation* v. *Commission on Special Revenue,* 173 Conn. 384, 386, 377 A.2d 1119 (1977); *East Side Civic Assn.* v. *Planning & Zoning Commission,* 161 Conn. 558, 560, 290 A.2d 348 (1971); and is conditioned upon strict compliance with the provisions by which it is created. *In re Nunez,* 165 Conn. 435, 441, 334 A.2d 898 (1973); *Chanosky* v. *City Building Supply Co.,* 152 Conn. 449, 451, 208 A.2d 337 (1965). The failure to file an appeal from an administrative decision within the time set by statute renders the appeal invalid and deprives the courts of jurisdiction to hear it. See *Royce* v. *Freedom of Information Commission,* supra, 587; *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 6, 363 A.2d 1386 (1975).

The right to judicial review of CHRO's action is created by General Statutes § 46a-95 (j), which provides that "any complainant aggrieved by the dismissal of his complaint by [CHRO] may appeal therefrom in accordance with section 4-183."[11] At the time in ques-

[11] "[General Statutes] Sec. 46a-95. (Formerly Sec. 31-128.) ENFORCEMENT OF ORDERS BY SUPERIOR COURT. RIGHT OF APPEAL. . . . (j) The commission, any respondent or any complainant aggrieved by a final order of a hearing officer or any complainant aggrieved by the dismissal of his complaint by the commission may appeal therefrom in accordance with sec-

tion, General Statutes § 4-183 (b) provided in relevant part: "Proceedings for such [an] appeal shall be instituted by filing a petition in superior court . . . within forty-five days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within forty-five days after the decision thereon."[12]

The trial court held that the plaintiff's petition for review was untimely whether the date the appeal period started to run was February 25, 1982, the date CHRO mailed notice of its dismissal of the complaint to the plaintiff; June 18, 1982, the date the plaintiff made his first request for reconsideration; or August 26, 1982, the date CHRO denied that request. We hold that the appeal period began to run on February 25, 1982, and therefore we need not consider the relevance of the other dates.

Notice of the dismissal of the plaintiff's complaint was mailed to him on February 25, 1982. The time in which to file a petition for judicial review of this dismissal thus

tion 4-183, except venue for such appeal shall be in the judicial district where the discriminatory practice is alleged to have occurred or in the judicial district in which such person resides or transacts business. The court on appeal shall also have jurisdiction to grant to the respondent or complainant such temporary relief or restraining order as it deems just and suitable, and in like manner to make and enter a decree enforcing or modifying and enforcing as so modified or setting aside, in whole or in part, the order sought to be reviewed."

[12] "[General Statutes (Rev. to 1983)] Sec. 4-183. APPEAL TO SUPERIOR COURT. . . . (b) Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the aggrieved person resides or if such person is not a resident of this state to the court for the judicial district of Hartford-New Britain within forty-five days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within forty-five days after the decision thereon. Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice or, if a rehearing is requested, thirty days after the decision thereon, except that service upon an agency may be made by mailing a copy of the petition by registered or certified mail, postage prepaid, to the office of the commissioner of the agency or to the office of the attorney general in Hartford."

expired on April 11, 1982, one year before the plaintiff actually filed his petition. Because subject matter jurisdiction cannot be created by waiver; see, e.g., *Laurel Park, Inc.* v. *Pac,* 194 Conn. 677, 678–79 n.1, 485 A.2d 1272 (1984); CHRO's consideration of requests for reconsideration filed after that date had no effect on the running of the appeal period. The plaintiff's petition for review was correctly dismissed as untimely.

There is no error.

In this opinion the other judges concurred.