STATE OF CONNECTICUT *v.* WILLIAM C. PARKER, JR.
(11531)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued October 3—decision released November 19, 1985

*Rose Stutz,* legal intern, with whom was *Joette Katz,* public defender, for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle* and *Michael Dearington,* state's attorneys, and *Barbara Taylor,* legal intern, for the appellee (state).

SANTANIELLO, J. After trial by jury the defendant, William Parker, Jr., was convicted of murder in violation of General Statutes § 53a-54a (a). On appeal, he claims that the trial court erred: (1) in admitting an in-court identification of the defendant that was derived from an unnecessarily suggestive photographic array; and (2) in excluding from evidence certain newspaper clippings which were offered to show the bias of the state's chief witness, the defendant's father. We find no error.

The jury could reasonably have found that sometime between March and November, 1979, the defendant killed Vercina Ann Dennis to prevent her from implicating him in another murder. The defendant admitted to his father, William Parker, Sr., that he had com-

mitted both murders. The father, who feared that his son might kill again, cooperated with the police and helped them locate Vercina Ann Dennis' body. The defendant's description to his father of how he killed the girl was corroborated by physical evidence found near the body. Vercina Ann Dennis had been missing since March, 1979.

## I

The defendant first claims that the trial court erred in admitting an in-court identification of the defendant by Versie Mae Dennis, the victim's mother. Dennis was called by the state as a witness and testified that in March, 1979, the defendant twice came into the store where she worked and inquired as to her daughter's whereabouts. Before trial in January, 1980, Dennis told two state police officers that the defendant had been looking for her daughter. To verify the identification, the officers gave her three photographs to look at: one was of a man Dennis knew well, Henry Horton; one was of a man named John Crawford; and one was of the defendant. The defendant's picture was the only one dated and inscribed with the words "Connecticut State Police." From those three photos, Dennis picked out the defendant as the person who had been looking for her daughter. She stated to the officers that she was certain the defendant was the person in the store. The defendant moved to suppress the introduction of Dennis' in-court identification on the grounds that the earlier out-of-court identification was unreliable and was based on an unnecessarily suggestive procedure. The trial court denied the defendant's motion and allowed Dennis' testimony.

The defendant argues that the police procedures used to obtain the earlier identification were unnecessarily suggestive and that the later in-court identification was unreliable. Specifically, he claims that the photographs

used in the array were themselves "suggestive" and that the police may have induced Dennis to pick out the defendant's picture by notifying her beforehand that they suspected the defendant to be her daughter's murderer.

We have repeatedly held that a conviction based on an in-court identification which follows an out-of-court photographic identification will be set aside only "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *State* v. *Fullwood,* 193 Conn. 238, 243–44, 476 A.2d 550 (1984), quoting *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Vass,* 191 Conn. 604, 609, 469 A.2d 767 (1983); *State* v. *Doolittle,* 189 Conn. 183, 190, 455 A.2d 843 (1983). " 'A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure.' " *State* v. *Hinton,* 196 Conn. 289, 293, 493 A.2d 836 (1985); *State* v. *Fullwood,* supra, 244. The determination whether an identification procedure has violated a defendant's due process rights must be made on an ad hoc basis. The inquiry is two-pronged: " '[F]irst, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the "totality of the circumstances." ' " *State* v. *Hinton,* supra, 292–93, quoting *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980); *State* v. *Austin,* 195 Conn. 496, 499, 488 A.2d 1250 (1985).

Reviewing the record in light of these principles, we cannot say that the identification procedures employed by the state police were so impermissibly suggestive as to render the identification unreliable. The defend-

ant claims that the police told Dennis that they suspected him and thus suggested to her that he was the person looking for her daughter. We recognize that if the police had actually told Dennis that they had arrested William Parker, Jr., *before* she volunteered the information about his coming into the store, then the subsequent identification might have been suggestive. See *State* v. *Austin,* supra, 500–501. From the evidence adduced, however, the court as the trier of fact could reasonably have found that it was Dennis who first raised the defendant's name in connection with the man who was looking for her daughter. Originally Dennis did not know who the defendant was when he came into the store, but she testified that, at a later point in time, one of the defendant's cousins informed her that it was William Parker. Officer Andrew Ocif, one of the state policemen who was present when Dennis identified the defendant from the photo array, also testified that Dennis mentioned the defendant by name when describing the person who had been asking for her daughter.

The defendant also claims that the photographs given to Dennis were themselves impermissibly suggestive. Even if we were to agree, arguendo, that the photographs were unnecessarily suggestive, under the totality of the circumstances Dennis' identification was reliable. See *State* v. *Doolittle,* supra, 191–92; *State* v. *Maturo,* 188 Conn. 591, 596–97, 452 A.2d 642 (1982). In determining the reliability of identification evidence, we must consider the length of time between the event witnessed and the identification, the ability of the witness to view the defendant at that time, the witness' degree of attention, the accuracy of the witness' prior description of the defendant, and the level of certainty demonstrated in making the identification. *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *State* v. *Hinton,* supra, 295–96. Here,

Dennis had an excellent opportunity to view the defendant when he came into the store. The lights were bright, the defendant came within just a few feet of her and he stayed approximately five minutes each time. Dennis' attention was also excellent. She testified that the store was not that busy, that she engaged the defendant in face-to-face conversation and that she concentrated on his face. Dennis also exhibited a high degree of certainty that the defendant was the person who had been looking for her daughter. As to the other factors, we cannot say that the ten month period between the identification and Dennis' viewing of the defendant was so long as to render her identification unreliable. Also, the fact that Dennis did not give a detailed description of the defendant before selecting his photo is insignificant when she was able to refer to him by name.

Overall, we conclude that the procedures used to identify the defendant were not so suggestive and unreliable as to violate his right to due process. Thus, the trial court did not err in refusing to suppress the in-court identification.

## II

The defendant next claims that the trial court erred in excluding from evidence certain newspaper clippings that announced a reward for information on several murders in the New Haven area. At trial, the state relied heavily on the testimony of William Parker, Sr. On cross-examination, defense counsel brought out the fact that the father had an extensive criminal record. In an attempt further to impeach his credibility, counsel also inquired as to his knowledge of a reward posted in New Haven concerning a series of murders. The father testified that he had read some newspaper articles concerning murders in the New Haven area, but, when asked if he knew about any rewards, he replied,

"no." The defendant sought to introduce into evidence a number of newspaper clippings that announced rewards for information leading to the arrest and conviction of persons responsible for seven killings in the New Haven vicinity, but the trial court ruled that the clippings were irrelevant and refused to admit them.[1]

It is well established that the trial court has broad discretion in determining the relevancy of evidence. *State* v. *DeJesus,* 194 Conn. 376, 382, 481 A.2d 1277 (1984); *State* v. *Maldonado,* 193 Conn. 350, 365, 478 A.2d 581 (1984). This court will ordinarily not disturb a trial court's ruling on the admissibility of evidence unless a clear abuse of discretion is shown. *State* v. *DeJesus,* supra; *State* v. *Bember,* 183 Conn. 394, 408, 439 A.2d 387 (1981). Thus, if we find that the trial court could have reasonably concluded that the proffered evidence was irrelevant, then the ruling must stand.

Here, the trial court did not abuse its discretion in excluding the newspaper articles. Indeed, under the circumstances of the case it was perfectly reasonable for the court to have concluded that the articles were irrelevant. The clippings offered were about rewards for information about seven killings in the New Haven area, but the articles were released almost eleven months before William Parker, Sr., talked with the police. The articles did not mention Vercina Ann Dennis

---

[1] The defendant in his brief also argues that the trial court's refusal to admit the clippings abridged his right to confront and cross-examine witnesses against him. This constitutional claim was never raised at trial. "We have said many times: 'Only in most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court.' *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973); *Tucker* v. *Alleyne,* 195 Conn. 399, 402 n.3, 488 A.2d 452 (1985). The defendant has raised no exceptional circumstances to warrant departure from this general rule and the record does not adequately support a claim that the defendant has clearly been deprived of a fundamental right or a fair trial." *State* v. *Thompson,* 197 Conn. 67, 76–77 n.7, 495 A.2d 1054 (1985). Thus, we only review the defendant's claim that the trial court erred in its evidentiary ruling.

and the rewards described were not applicable to her murder. There was no evidence that the defendant's father ever read these newspaper clippings or that he was offered any reward.[2] Furthermore, William Parker, Sr., denied having any knowledge of a reward.

There is no error.

In this opinion the other judges concurred.

---

[2] We note in passing that defense counsel waited to introduce the newspaper clippings until after all of the witnesses in the case had been called. At that time no foundation had been laid connecting the witness to these articles. Although it would have been feasible for the trial court to have allowed the defendant to recall William Parker, Sr., to the stand, any further inquiry would have been extraneous to the main issues at trial. The witness had previously denied having any knowledge of a reward. See *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 344, 150 A.2d 597 (1959); *McQuillan* v. *Willimantic Electric Light Co.,* 70 Conn. 715, 719–20, 40 A. 928 (1898).