[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this action to contest the dismissal of his employment discrimination complaint, which alleged ethnic and national origin discrimination prohibited by Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000 et seq.[1] The Connecticut Commission on Human Rights and Opportunities ("CHRO") is an agency of the State of Connecticut charged, pursuant to General Statutes §§ 46a-54
(8), 46a-56 (3), 46a-60 and 46a-83, with the investigation and prosecution of discriminatory employment practices in Connecticut. CHRO has also been designated as a "deferral agency" by the federal government for the enforcement of Title VII employment discrimination complaints.
The plaintiff's complaint was filed with CHRO on October 20, 1994. The complaint alleges that the plaintiff's employer, Bridgeport Health Care Center, Inc. ("BHCC"), by warning him not to speak Spanish at work was discriminating against him because of his Hispanic ancestry and Puerto Rican national origin. CHRO CT Page 3113 on October 26, 1994 sent the plaintiff a "Service Letter To Complainant" with attachments explaining the rights, duties and responsibilities of parties to CHRO proceedings. (Return of Record ("ROR"), pp. 42-48, 50.) Also on October 26, 1994, a notice was sent by CHRO to the plaintiff's attorney requesting the return of the Statement of Remedy, Witness List and Notice to Complainant — Duty to Cooperate forms. (ROR, p. 49.) The plaintiff's attorney returned such forms with her letter of December 7, 1994. (ROR, p. 101.)
Pursuant to Public Act 1994, No. 94-238, codified as General Statutes § 46a-83(b),[2] CHRO is obligated to complete a review of the file within ninety days of the filing of the complaint. If, as a result of the review, the complaint is found to be frivolous on its face, fails to state a claim for relief or there is no reasonable possibility that investigation will result in a probable cause finding, the complaint shall be dismissed. This statutorily mandated review is known as the merit assessment review ("MAR").
The employer BHCC was notified of the complaint by letter dated October 26, 1994. The employer received an extension of time to file an answer and position statement to CHRO's request for information. A detailed answer and position statement was filed on December 7. 1994. (ROR, pp. 52-90.) In accordance with the CHRO procedural requirements, the employer certified its mailing of a copy of its answer and position statement to the complainant, the plaintiff in the present appeal. A copy, however, was not provided to plaintiff s attorney until after the complaint was dismissed.
The plaintiff was notified by letter dated December 9, 1994 specifically about the MAR process and was informed that: "This is your final opportunity to provide additional information to your case file, prior to our decision to either dismiss or retain your complaint."[3] (ROR, p. 40.)
The employer's answer and position statement documented that plaintiff had never been disciplined for speaking Spanish, but had numerous written warnings for poor attendance, neglect of duties, safety concerns and confrontations with other employees. BHCC also indicated that it did not employ an English only rule. It's rule was necessitated by the patient dignity requirement mandated by federal regulations and a plan of correction imposed by the State of Connecticut, Department of Health Services. CT Page 3114 Employees while working in or near a patient or patient's room, were not to speak in a language which the patient did not understand. In one instance, Portuguese speaking employees were counseled for speaking Portuguese around a patient who became upset in the belief that the workers were speaking about him. (ROR, p. 88.) At a Resident's Council Meeting on August 7, 1991, a complaint was made about an employee and it was indicated that 85% of the staff were Portuguese and had difficulty with communication. (ROR, p. 89.)
The plaintiff made no submissions on their merits other than his complaint affidavit, and a list of the names of three witnesses.
The merit assessment review was completed on January 18, 1995, just within the ninety day period from filing of the complaint set forth by § 46a-83.
The complaint was reviewed out for the following reasons:
 There is no reasonable possibility that further investigation will result in finding of reasonable cause inasmuch as it was determined that respondent has asked all employees to speak English whenever interacting with patients. This is in Abeyance of the State of Connecticut, Department of Health Services and Federal Regulations requiring that patients be treated at all times with "dignity." This rule is also to address patients that have complained about employees speaking a different language (statement enclosed as part of respondent's answer), stating that they could not understand them. Respondents have stated that similarly, when on break, or in the employee lunch room, employees are not prohibited from conversing in a language other than English. Further, there is no evidence that you received a formal warning about speaking spanish, rather they were for poor attendance, punctuality and confrontations with co-workers.
 Therefore, it does not appear that your ancestry, Puerto Rican, nor your national origin, Puerto Rico was a motivating factor in respondents issuing you written warnings.
(ROR, p. 13.) CT Page 3115
The plaintiff, through his attorney, by fax on January 31, 1995, requested a reconsideration of the dismissal. (ROR, p. 7.) The request for reconsideration was denied on April 17, 1995. (ROR, p. 2.) The plaintiff appealed the CHRO's action on the dismissal pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§ 4-166 and 4-183. The appeal was filed on May 31, 1995. The answer and record were filed on September 14, 1995. Briefs were filed by the plaintiff on December 9, 1996 and CHRO on February 3, 1998. The case was assigned for oral argument for November 12, 1998, at which time, the parties elected to submit the appeal on the administrative record and the parties' briefs.
The plaintiff's appeal is timely pursuant to §§ 46a-83a
and 46a-94a which allow an appeal within forty-five days of the denial of reconsideration of a MAR dismissal. The plaintiff is also aggrieved for purposes of a UAPA appeal, by the dismissal of his employment discrimination complaint.
The plaintiff's appeal raises numerous issues: (1) that §46a-83 is unconstitutionally vague; (2) that the MAR dismissal provisions of § 46a-83 are unconstitutionally vague; (3) that the enforcement of § 46a-83 was arbitrary and discriminatory; (4) that the MAR process violated the plaintiff's due process rights; (5) that the MAR provisions of § 46a-83 (b) violate the equal protection clause; (6) that CHRO failed to follow the MAR procedures of § 46a-83 (b); (7) that the dismissal was clearly erroneous in view of the record; and (8) that the dismissal was an abuse of discretion. The court finds all the issues for the defendant CHRO.
The plaintiff's void for vagueness constitutional claims focus on the MAR "no reasonable possibility" standard for dismissal. The "no reasonable possibility" standard uses terms of common usage with plain and ordinary meaning. General Statutes § 1-1(a); State v. Dyson, 238 Conn. 784, 798 (1996). "In addition, it is well established that if a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary. . . ." (Citations omitted; internal quotation marks omitted.) State v. Dyson. supra.
"To prevail on their facial vagueness claim, the plaintiffs therefore must demonstrate that the statute has no core meaning. Put another way, a determination that the statute is not vague CT Page 3116 with respect to at least one application will defeat their facial challenge. This burden is augmented by our strong presumption . . . in favor of the statute's constitutionality. . . ." (Citations omitted.) Benjamin v. Bailey,234 Conn. 455, 484 (1995). A validly enacted statute carries with it a strong presumption of constitutionality and those who challenge its constitutionality must sustain the heavy burden of proving unconstitutionality beyond a reasonable doubt. Morasciniv. Commissioner of Public Safety, 236 Conn. 781, 789 (1996);Fleming v. Garnett, 231 Conn. 77, 88 (1994).
Section 46a-83 as a civil statute "may survive a vagueness challenge by a lesser degree of specificity than in criminal statutes." State Management Assn. of Connecticut. Inc. v. O'Neil,204 Conn. 746, 757 (1987); see also Hoffman Estates v. Flipside,Hoffman Estates. Inc., 455 U.S. 489 (1982).
The "no reasonable possibility" standard relates to the "reasonable cause" issue which was found to constitute "a flexible common sense standard". Ierardi v. Commission on HumanRights Opportunities, 15 Conn. App. 569, 580-81 (1988).
The CHRO has also explained the "reasonable possibilities standard" in its notice to plaintiff (ROR, pp. 23-25.) "No reasonable possibility" is also a recognized legal standard by courts in assessing whether an erroneous jury charge of constitutional dimensions, could have influenced a jury verdict.State v. Desimone, 241 Conn. 439, 459 n. 27 (1997); State v.Breton, 235 Conn. 206, 243 (1995). Similarly, the other MAR standards for dismissal are familiar legal concepts. Failure "to state a claim for relief" is the Federal Rules of Civil Procedure standard for a motion to dismiss. Fed.R.Civ.P. 12(b)(6); see also Practice Book § 10-39(1) (motion to strike standard). "Frivolous on its face" is a determination courts have long made as to complaints. See Wilson v. Cohen, 222 Conn. 591, 603 (1992). Accordingly, the court concludes that § 46a-83 is not void for vagueness either facially or as applied to plaintiff.
The plaintiff correctly claims a property interest in the employment discrimination cause of action. See Logan v.Zimmerman Brush Co., 455 U.S. 422, 428 (1981). "[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." Id., 428. Logan specifically found the right to use the adjudicatory procedures of a state anti-discrimination agency is a protected property interest, and CT Page 3117 that some form of hearing was required to allow redress of discrimination grievances. Id., 428-30. In Logan, the United States Supreme Court reversed a ruling which held that a mandatory one hundred and twenty day fact finding conference period lapse of time defeated a claim. Our Supreme Court, inAngelsea Productions. Inc. v. Commission on Human Rights Opportunities, 236 Conn. 681, 698-99 (1996), recognized thatLogan was premised on the complainant having no control over the agency's failure to schedule the conference, and the plaintiff's having no other recourse at that time.
In the instant case, the plaintiff failed to respond to the employer's answer and detailed response. General Statutes §46a-83b. (The Plaintiff's attorney in requesting a reconsideration of the dismissal on January 31, 1995 indicated a response was being prepared, but none was provided by the time the request was denied on April 17, 1995). The plaintiff and his attorney also failed to amend the complaint (Regs., Conn. State Agencies § 46a-54-54), to request depositions and/or subpoenas (General Statutes § 51-85), or exercise the right to inspect and copy documents pertaining to his complaint in a timely fashion (General Statutes § 46a-83 (g)). The plaintiff also had the right to pursue his employment discrimination complaint in United States District Court within ninety days of the EEOC determination of February 3, 1997.
Due process essentially requires notice and the opportunity to be heard. If a party does not avail himself of such opportunity the available procedure is not rendered unconstitutional. Rogers v. Commission on Human Rights Opportunities, 195 Conn. 543, 548-49 (1985). A state cannot be held to have violated due process when it has made procedural protections available and the plaintiff has failed to take advantage of them. Dusanek v. Hannon, 677 F.2d 538, 543 (7th
Cir.), cert. denied, 459 U.S. 1017 (1982). Due process requires that a party adversely affected by government action be afforded an opportunity to be heard. If advantage of that opportunity is not taken, it is not the fault of the government. GriffinHospital v. Commission on Hospitals Health Care,200 Conn. 489, 502 (1986), appeal dismissed, 479 U.S. 1023 (1986).
The plaintiff was told on two occasions during the MAR that he must produce all his evidence because of the nature of the process. (ROR, pp. 42-50, 40.) He failed to do so and thus failed to rebut the employer's articulation of a legitimate CT Page 3118 non-discriminatory reasons for disciplining the plaintiff and for acting to uphold the dignity of its patients as required by federal and state regulations.
Due process does not require a hearing when it appears that the complainant cannot succeed. FPC v. Texaco, Inc., 377 U.S. 33, 39-44 (1964). Threshold requirements before a hearing is held do not violate due process. Weinberger v. Hynson, Westcott Dunning, Inc., 412 U.S. 609, 621 (1973).
The legislative history of Public Act 94-238, make the intent to review out insubstantial discrimination claims inescapable. The MAR procedure did not violate the plaintiff's due process or equal protection rights.
The plaintiff also challenges the evidentiary basis of the conclusion that there was no reasonable possibility that further investigation would have led to a reasonable cause to believe discrimination had taken place.
These challenges are determined by the substantial evidence rule.
Our review of an agency's factual determination is constrained by General Statutes § 4-183 (j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probate, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of CT Page 3119 review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . .
(Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 117-18 (1998).
The plaintiff does not dispute his history of disciplinary problems totally unrelated to his ancestry or national origin. There is also no written evidence whatsoever of any discipline of the plaintiff for speaking Spanish in contrast to numerous written warnings to the plaintiff for misconduct. The plaintiff only offered the names of witnesses and no information as to the nature of their testimony.
Legally, the employer's policy appeared analogous to the policy found non-discriminatory in Garcia v. Spun Steak Co.,998 F.2d 1480 (9th Cir.), petition for rehearing denied, 13 F.3d 296
(1993), cert. denied, 114 S.Ct. 2726, 129 L.Ed.2d 849 (1994). The letter from the Commissioner of the Department of Public Health and Addiction Services does not specifically relate to the period at issue in the plaintiff's complaint, and is not necessarily inconsistent with the BHCC policy.
The plaintiff signed an affidavit in English and thus appears at least bilingual in English. His execution of the complaint affidavit would also suggest a level of literacy. The evidence of plaintiff's alleged inability to speak English and illiteracy are not supported by the record. The plaintiff's employment records are in writing and in English.
The employer's English only around patients policy was also primarily directed at speakers of Portuguese, presumably also of Portuguese descent.
The reconsideration request was made on the claim of failure to provide a copy of the BHCC answer to plaintiff However, the BHCC answer was certified as delivered to the plaintiff.
For the reasons set forth above, the CHRO's decision is affirmed and the appeal is dismissed.
Robert F. McWeeny, J. CT Page 3120