## MICHAEL IERARDI *v.* COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES ET AL.
### (4973)

BORDEN, BIELUCH and FOTI, Js.

Argued January 19—decision released August 23, 1988

*Jean M. Stawicki,* with whom, on the brief, were *John L. Stawicki* and *Russell W. Sims,* for the appellant (plaintiff).

*Thomas J. Ring,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellee (named defendant).

*George E. Finlayson, Jr.,* for the appellee (defendant Marlin Rockwell Corporation).

BORDEN, J. The plaintiff appeals from the judgment of the trial court dismissing his appeal from a decision of the defendant commission on human rights and opportunities (commission). The commission determined that there was no reasonable cause to believe that a discriminatory practice had been committed, and dismissed the plaintiff's complaint without a hearing. The principal issue involves the meaning of the term "reasonable cause" as used in General Statutes § 46a-83 (a), which governs the investigation of complaints of discriminatory practices.[1]

---

[1] General Statutes § 46a-83 (a) provides: "After the filing of any discriminatory practice complaint, the chairman of the commission shall refer the same to a commissioner or investigator to investigate and if the commissioner or investigator determines after the investigation that there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint, he shall endeavor to eliminate the practice complained of by conference, conciliation and persuasion."

General Statutes § 46a-84 (a) provides: "In case of failure to eliminate a discriminatory practice complained of pursuant to section 46a-82, the investigator or investigating commissioner shall certify the complaint and the results of his investigation to the chairman of the commission and to the attorney general."

General Statutes § 46a-84 (b) provides in pertinent part: "Upon certification of the complaint, the chairman of the commission shall appoint a hearing examiner or one member of the commission to act as a hearing officer to hear the complaint . . . ."

General Statutes § 46a-86 (a) provides, in general terms, that if the hearing officer determines upon all the evidence that the respondent has engaged in a discriminatory practice, he shall, inter alia, issue a cease and desist order, and order the respondent to take appropriate affirmative action. General Statutes § 46a-86 (e) provides, in general terms, that if the hearing officer finds that the respondent has not engaged in a discriminatory practice, he shall dismiss the complaint.

In 1979, the plaintiff was terminated from his employment as a foreman with the defendant, Marlin Rockwell Corporation, a Division of TRW, Inc. (company). The plaintiff filed a complaint with the commission alleging age discrimination and a retaliatory firing. After an investigation, the commission dismissed the complaint on March 25, 1982, for lack of sufficient evidence to support a finding of reasonable cause that he was terminated for the reasons alleged. In a letter dated and postmarked April 2, 1982, the plaintiff requested reconsideration by the commission of the dismissal of his complaint pursuant to § 31-125-12 of the Regulations of Connecticut State Agencies.[2] The application for reconsideration was received by the commission on April 8, 1982. On August 26, 1982, the commission denied the plaintiff's application for reconsideration as untimely.

On September 25, 1982, the plaintiff delivered this petition for an administrative appeal to a sheriff for service upon the defendants. The petition was served on the defendants and filed in the Superior Court soon thereafter. The defendants moved to dismiss the appeal on the ground that the court lacked subject matter jurisdiction because the plaintiff failed to serve the appeal upon the parties within the time period fixed by General Statutes (Rev. to 1981) § 4-183 (b). The court denied the motion to dismiss. On the merits of the plaintiff's appeal, the trial court concluded that the record supported the investigator's finding, adopted by the commission, that there was no reasonable cause

---

[2] "[Reg., Conn. State Agencies] Sec. 31-125-12. Application for reconsideration of dismissal of complaint. The complainant may apply for a reconsideration of such dismissal. The application shall be in writing, stating specifically the grounds upon which it is based, and *shall be filed within seven days from the date of the notice of dismissal in the office of the commission.* An application for reconsideration of a dismissal of a complaint prior to hearing may be granted or denied at the discretion of the chairman." (Emphasis added.)

to believe that the claimed discriminatory practices had occurred. The trial court therefore dismissed the plaintiff's administrative appeal. This appeal followed.

The plaintiff claims that the trial court erred (1) in finding that the plaintiff had not met his burden of proof before the commission, (2) in rejecting his requests to supplement the trial court record or to remand the matter to the commission for further evidence, and (3) in rejecting his claim that his request to the commission for reconsideration was timely. He also claims that the commission's conduct was so procedurally flawed that it denied him due process of law. The defendants claim, as an alternative ground upon which to sustain the judgment, that the trial court lacked subject matter jurisdiction because the plaintiff's appeal was untimely filed.

I

The defendants claim that the trial court lacked subject matter jurisdiction. They contend that the plaintiff's request for reconsideration was untimely, and therefore did not extend the time to appeal until after the denial of the request for reconsideration on August 26, 1982. They argue that the appeal had to be timely served and filed in relation to the March 25 dismissal of the complaint by the commission in order for the court to have jurisdiction. This claim is intertwined with the plaintiff's claim that his request for reconsideration was timely. We therefore turn first to the issue of whether the plaintiff's request for reconsideration was timely.

A

The plaintiff claims that the trial court erred in finding that the commission properly denied his request for reconsideration as untimely, and therefore that the trial court should have sustained his appeal and remanded the case to the commission on the merits of his application for reconsideration. We disagree.

The commission regulations state that an application for reconsideration of the dismissal of a complaint must be "filed within seven days from the date of the notice of dismissal in the office of the commission." Regs., Conn. State Agencies § 31-125-12; see footnote 2, supra. The trial court found that the plaintiff's application for reconsideration was not filed until it was received by the commission on April 8, 1982, and that it was therefore untimely under § 31-125-12. The plaintiff does not challenge the validity of this regulation. He argues that his application for reconsideration was timely filed because an application for reconsideration must be considered to be "filed" upon mailing in order to make mailing a practical alternative.

Generally, in the absence of provisions to the contrary, fulfillment of a filing requirement is not accomplished upon mailing but "requires actual delivery." *Piscitello* v. *Boscarello,* 113 Conn. 128, 131, 154 A. 168 (1931). Moreover, the provision in issue here specifically requires that the reconsideration request be timely filed *"in the office* of the commission." The plaintiff's interpretation of § 31-125-12 would render meaningless this requirement of that provision. Reading the provision to give meaning to all of its parts; see *Eagle Hill Corporation* v. *Commission on Hospitals & Health Care,* 2 Conn. 68, 75, 477 A.2d 660 (1984); we conclude that it contemplates that the filing of an application for reconsideration is effective only upon actual delivery to the commission. Although, as the plaintiff asserts, other regulations authorize filing "by personal delivery or registered mail" in the case of complaints; Regs., Conn. State Agencies § 31-125-7; and in the case of answers; Regs., Conn. State Agencies § 31-125-20; these provisions do not aid in our interpretation of § 31-125-12 because only the latter provision plainly specifies that filing must occur *within a specified time* and *at a specified location,* regardless of the method

used. In reaching our conclusion here, we are mindful that an agency's construction of its own duly adopted regulations should be afforded great deference by the courts. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496–97, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 91 L. Ed. 2d 819 (1986). Accordingly, the agency properly refused to address the merits of the plaintiff's request for reconsideration.

## B

We turn, therefore, to the defendants' jurisdictional claim, namely, that the plaintiff's appeal to the court was untimely. Their argument hinges on the contention that the plaintiff's request for reconsideration did not toll the running of the appeal period because it was not timely filed with the commission. We disagree. We conclude that, although the plaintiff's request was untimely within the strictures of the commission's regulation, it did postpone the running of the appeal period because it was filed with the commission within the statutory appeal period.

"The failure to file an appeal from an administrative decision within the time set by statute renders the appeal invalid and deprives the courts of jurisdiction to hear it." (Citations omitted.) *Rogers* v. *Commission on Human Rights & Opportunities,* 195 Conn. 543, 550, 489 A.2d 368 (1985); *Hanson* v. *Department of Income Maintenance,* 10 Conn. App. 14, 16, 581 A.2d 208 (1987). This administrative appeal was filed within the time set by statute.

The right to judicial review of the commission's action is created by General Statutes § 46a-95 (j), which provides that "any complainant aggrieved by the dismissal of his complaint by the commission may appeal therefrom in accordance with section 4-183." General Statutes (Rev. to 1981) § 4-183 (b), which governed the

plaintiff's administrative appeal under the Uniform Administrative Procedure Act (UAPA), provides, in pertinent part, that "[p]roceedings for such [an] appeal shall be instituted by filing a petition in superior court . . . within forty-five days after the mailing of the notice of final decision of the agency or, if a rehearing is requested, within forty-five days after the decision thereon. Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice or, if a rehearing is requested, within thirty days after the decision thereon."[3]

Although the commission was entitled to regard the request as untimely pursuant to § 31-125-12 of its regulations, and therefore to decline to consider the substance of the requested reconsideration, that did not determine its untimeliness for purposes of a rehearing request contemplated by General Statutes § 4-183 (b), which governs the time frame for taking of administrative appeals. A request for reconsideration postpones the running of the appeal period under § 4-183 (b) until "the decision thereon"; General Statutes § 4-183 (b); so long as the request is filed with the agency within the period for the commencement of an administrative appeal by service upon the proper parties thereto. *Con-*

[3] In its present form, General Statutes (Rev. to 1987) § 4-183 (b) states: "Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the aggrieved person resides or if such person is not a resident of this state to the court for the judicial district of Hartford-New Britain within forty-five days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within forty-five days after mailing of the notice of the decision thereon. Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice or, if a rehearing is requested, within thirty days after mailing of the notice of the decision thereon, except that service upon an agency may be made by the appellant mailing a copy of the petition by registered or certified mail, postage prepaid, without the use of a sheriff or other officer, to the office of the commissioner of the agency or to the office of the attorney general in Hartford."

*necticut Natural Gas Corporation* v. *DPUC,* 1 Conn. App. 1, 3 n.3, 467 A.2d 679 (1983); *Boulevard Dodge Sales, Inc.* v. *Kozlowski,* 31 Conn. Sup. 455, 457–58, 334 A.2d 235 (1974).

This conclusion ensures both consistency and fairness in an area of our law where the slightest misstep by a party seeking judicial review of agency action can deprive the trial court of subject matter jurisdiction. Consistency is maintained because state agencies can adopt differing internal rules governing the time period during which each will entertain requests for reconsideration, while reconsideration requests filed with all agencies within the initial appeal period established by § 4-183 (b) will have the effect of postponing the running of the statutory appeal period. Fairness will be fostered where, as here, a plaintiff attempts to file his application for reconsideration in a timely manner, only to be informed long after the appeal period otherwise would have expired, that he is out of luck. We do not believe that the UAPA contemplates such a harsh result.

The defendants' reliance on *Rogers* v. *Commission on Human Rights & Opportunities,* supra, is misplaced. In *Rogers,* the plaintiff's request for reconsideration was filed beyond the initial appeal period established by General Statutes § 4-183 (b), and therefore the reconsideration request could not toll the running of the appeal period. See *Boulevard Dodge Sales, Inc.* v. *Kozlowski,* supra, 457–58.

Accordingly, we conclude that the time for appeal in this case did not begin to run until the commission denied the plaintiff's application for reconsideration on August 26, 1982. Since the defendants do not dispute that the plaintiff's appeal was timely served and filed in relation to that mailing, the trial court had jurisdic-

tion to address the merits of the plaintiff's administrative appeal. This brings us to the plaintiff's remaining claims of error.

## II

The plaintiff claims that the court erred in finding that the plaintiff had not met his burden of proof before the commission. The facts relevant to this claim of error are as follows.

The basis of the plaintiff's claim of age discrimination was that the company terminated his employment as a foreman one hundred days before his sixty-second birthday, when he could have retired with full pension rights. He claimed that this was done after forty-two years of faithful employment. He further claimed that the company, through supervisory personnel, changed his job classification, began a series of acts to make it difficult for him to achieve his production goals and, at the same time, improperly evaluated him. He contended that, after new management took over, there was a pattern of activity by management to terminate older employees, and because of it he had made a complaint to the commission in 1977. He asserted that after that complaint was dismissed in 1978, evaluations by the company were made unfairly and more frequently so as to make a record of sufficient cause for termination, in order to mask the real reasons, namely, his age and retaliation for filing the complaint in 1977.

The commission's investigator obtained information from the company that the plaintiff had received poor job performance evaluations in 1976, 1978, and three times in 1979. The investigator contacted two of the witnesses whose names the plaintiff had supplied as having information to confirm his claim of age discrimination. One witness related to the investigator that he was told to "get rid" of the plaintiff because the plaintiff's work performance was not good enough to meet

the new management's standards. The other stated that he had heard no remarks directed to the plaintiff's age, and noted that the plaintiff had a personality conflict with two superiors. The investigator also determined that at the time of the complaint, twenty-four of the twenty-eight foremen employed by the company were over the age of forty, five being older than the plaintiff.

The investigator also found that the plaintiff "had serious performance problems and a personality conflict with [two supervisors]. Although [the plaintiff] was given numerous counseling sessions in specific problem areas and opportunities to improve his performance, he did not do so. [Company] records indicate that no other foreman had been given as many unsatisfactory evaluations and counseling sessions as [the plaintiff]. A younger foreman who received an unsatisfactory evaluation was able to improve his production through counseling. The allegations that [the plaintiff] was discriminated against because of his age and retaliated against for having filed a previous complaint are without support." Thereafter, the investigator recommended that "the complaint be dismissed for lack of sufficient evidence to support the allegations." The commission adopted this recommendation and dismissed the complaint for lack of sufficient evidence.

The plaintiff argues that it was his burden to establish a prima facie case of discrimination, that sufficient evidence existed in the record to cross that threshold, and that the commission therefore should not have dismissed his complaint. We disagree with his characterization of his burden, and, gauging the evidence in the record by the proper standard, we conclude that the commission was justified in dismissing his complaint.

General Statutes § 46a-83 (a) provides that after a discriminatory practice complaint is filed with the com-

mission, it shall be assigned to an investigator whose role, among other things, is to determine "after the investigation [whether] there is *reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint."* (Emphasis added.) Only where such a finding of reasonable cause is made and the investigator cannot thereafter "eliminate the practice complained of by conference, conciliation and persuasion"; General Statutes § 46a-83 (a); is the complaint certified and a hearing examiner appointed to conduct a formal hearing on the matter. General Statutes § 46a-84.

The plaintiff's characterization of his initial burden at the investigatory phase amounts to a claim that establishment of a prima facie case is the same as the statutory phrase, "reasonable cause for believing that a discriminatory practice has been or is being committed." General Statutes § 46a-83 (a). We do not read the two as synonymous.

The statute does not use the term "prima facie case," and the plaintiff does not point us to any legislative history or judicial gloss equating that term with "reasonable cause to believe." Moreover, the concept of a prima facie case, in the context of antidiscrimination legislation, applies to the complainant's initial burden of production at an adjudicative hearing. See *Chestnut Realty, Inc.* v. *CHRO,* 201 Conn. 350, 359, 514 A.2d 749 (1986). It means that the " 'plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion.' " Id., 361, quoting *International Brotherhood of Teamsters* v. *United States,* 431 U.S. 324, 358, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977). Thus, under the plaintiff's argument, if an investigation discloses enough evidence, viewed without regard to any potential frailties inherent in it or without regard to the quantity or quality of contrary evidence, to jus-

tify such an inference, a finding of reasonable cause would be required and he would be entitled to an adjudicative hearing. We acknowledge that in this case there was evidence which, so viewed, justified such an inference, at least regarding his claim of age discrimination.[4]

The issue, therefore, is whether the statutory "reasonable cause" standard requires that the commission look only at the evidence favorable to the plaintiff's claim, viewed in its most favorable light, and determine whether it justifies an inference of discrimination, or whether the standard requires more. Although the question is a close one, we conclude that the standard requires more.

We view the term "reasonable cause" as used in the statute as synonymous with "probable cause." Cf. *State v. Wilson,* 153 Conn. 39, 41, 212 A.2d 75 (1965) ("reasonable grounds to believe," as used in General Statutes § 6-49 [now § 54-1f (b)] is to be equated with "probable cause.") Probable cause " 'is a bona fide belief in the existence of facts essential under the law for the action *and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it.' "* (Emphasis added.) *Ledgebrook Condominium Assn.* v. *Lusk Corporation,* 172 Conn. 577, 584, 376 A.2d 60 (1977), quoting *Wall* v. *Toomey,* 52 Conn. 35, 36 (1884). "Probable cause is a

[4] The evidence to which the plaintiff points regarding his claim of age discrimination consists of the timing of his termination after forty-two years of employment and one hundred days before his retirement benefit would fully vest, his transfer to another department without training after thirty-nine years in his previous department, and an affidavit of John Hitchner, his previous supervisor, stating that Hitchner quit because he was told to build a case against the plaintiff, although he found nothing wrong with the plaintiff's work. The evidence to which the plaintiff points regarding his claim of a retaliatory firing consists of the timing of unsatisfactory performance reports; each, he claims, followed some identifiable agency action on the prior age discrimination complaint which he had filed.

flexible common sense standard. It does not demand that a belief be correct or more likely true than false." *Three S. Development Co.* v. *Santore,* 193 Conn. 174, 175, 474 A.2d 795 (1984). It deals with probabilities, and the "application of the factual and practical considerations of everyday life on which reasonable and prudent men act." *State* v. *Wilson,* supra.[5] This is consistent with the notion "that a purpose of the statute is to guard against subjecting a respondent to a hearing upon every complaint which might be made to the commission, however unfounded." *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 235, 278 A.2d 771 (1971).

This conclusion is also consistent with the rest of the statutory scheme. The statute obviously contemplates that the investigator will secure records through voluntary disclosure, and that "the commission may issue subpoenas requiring the production of records and other documents relating to the complaint under investigation." General Statutes § 46a-83 (c). It is equally obvious that this investigatory process may yield information both favorable and unfavorable to the claim of discrimination. We do not believe, however, as the plaintiff's argument would have it, that the same scheme requires the investigator to consider only the information favorable to the claim and to ignore any contrary information, no matter how strong.

We therefore consider whether application of these principles to this administrative record justifies the

[5] We do not imply that the investigator is free to act as an adjudicative tribunal by deciding which inferences are appropriately drawn and by resolving all material factual disputes. That role is reserved for the hearing officer. We believe that the statute does, however, give the investigator the authority to view all the evidence disclosed by the investigation, and to determine whether it produces a bona fide belief in the validity of the claim of discrimination which would satisfy a person of ordinary caution, prudence and judgment.

commission's action in this case. We do so, moreover, constrained by our limited scope of review of administrative factual decisions.

The scope of judicial review of the decision of a commission under the UAPA is narrow. General Statutes § 4-183 (g); *Neri* v. *Powers,* 3 Conn. App. 531, 537–38, 490 A.2d 528, cert. denied, 196 Conn. 808, 494 A.2d 905 (1985). The determination of factual issues is a matter within the province of the agency, and if the agency's decision is reasonably supported by the evidence in the record, it must be sustained. *Madow* v. *Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978).

In addition to the information favorable to the plaintiff's claim of age discrimination and retaliation; see footnote 4, supra; the investigation yielded a significant amount of information which contradicted those claims. That contradictory information, noted above, was that the plaintiff had received a series of poor performance evaluations from 1976 through 1979, that two of the witnesses identified by the plaintiff did not support his claim, and that the statistics regarding the ages of the other foremen employed by the company were inconsistent with his claim of age discrimination. There was also information that the plaintiff had a personality conflict with two supervisors, did not improve his performance through counseling sessions, and that he had received more unsatisfactory evaluations and counseling sessions than any other foreman. Although arguably the commission could have reached a different determination regarding reasonable cause in this case, we cannot conclude that the decision was not supported by the evidence in the record. Put another way, on this record, we cannot conclude that as a matter of law the commission must have formed a bona fide belief in the

validity of the plaintiff's claim which would satisfy a person of ordinary caution, prudence and judgment.[6]

## III

The plaintiff also claims that the return of the record was so flawed by irregularities that the court erred by neither allowing the record to be supplemented by exhibits and testimony nor remanding the matter to the commission for further proceedings. We disagree.

On four occasions in the proceedings before the trial court, the plaintiff attempted to add to the administrative record before the court through discovery techniques and through motions to add materials to the administrative record.[7] Among the claimed irregularities of the commission were the following: failing to follow up and obtain information from additional witnesses, misplacing material that the plaintiff had allegedly provided to the agency, refusing to investigate

[6] The plaintiff also argues that, because the record shows that the investigator made attempts at conciliation between the plaintiff and the company regarding the substance of the complaint, the commission necessarily had, in fact, determined that reasonable cause existed for a finding of age discrimination. The plaintiff's argument relies on a misreading of General Statutes §§ 46a-83 (a) and 46a-84 (a). While those provisions require that conciliation efforts occur after a finding of reasonable cause is made, neither provision suggests that conciliation may not be attempted in the absence of a finding of reasonable cause, or that once conciliation is attempted the agency is bound to find reasonable cause. The trial court properly concluded that "[a]lthough Connecticut General Statutes § 46a-83 provides that the investigator 'shall endeavor to eliminate the practice complained of by conference, conciliation and persuasion' if reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint, these procedures should always be available to the parties, whether or not probable cause is determined."

[7] The trial court's decision regarding one attempt by the plaintiff to utilize discovery techniques for this purpose is reported in *Ierardi* v. *Commission on Human Rights & Opportunities,* 40 Conn. Sup. 293, 493 A.2d 925 (1985).

certain allegations by the plaintiff and misplacing material submitted by the company.[8]

The court was called upon to determine whether the commission rendered its decision in accordance with the UAPA, General Statutes §§ 4-166 through 4-189. "Several axioms of administrative law generally, and the UAPA in particular, bear repeating here . . . . The [trial] court's essential function in such an appeal is to review the administrative proceedings to determine whether the action appealed from was legal. *Connecticut Television, Inc.* v. *Public Utilities Commission,* 159 Conn. 317, 329, 269 A.2d 276 (1970). The scope of judicial review under the UAPA is very restricted. *Lawrence* v. *Kozlowski,* 171 Conn. 705, 707, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). Except in the limited situation in which there is an allegation of procedural illegalities not shown in the record; General Statutes § 4-183 (f); that review is limited to the record and the court cannot hear evidence. *Arterburn Convalescent Home* v. *Committee on State Payments to Hospitals,* 176 Conn. 82, 86, 405 A.2d 48 (1978); cf. General Statutes § 4-183 (e) (court may, in limited circumstances, remand to agency for additional taking of evidence)." *Neri* v. *Powers,* supra, 537–38.

The taking of additional evidence, whether through discovery and presentation to the court, testimony by witnesses, or supplementation of the record, is controlled by General Statutes § 4-183 (f), which provides that "[i]n cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. . . ." The oppor-

---

[8] The plaintiff also raises claims of "inconsistencies and procedural irregularities" by the commission. A review of these claims, however, shows that they are related to concerns other than procedural irregularities, such as claims relating to burden of proof, findings of fact, and statutory interpretation, which are encompassed by his other claims of error.

tunity to present evidence in addition to that contained in the record is reserved for extraordinary cases. *Leib* v. *Board of Examiners for Nursing,* 177 Conn. 78, 92, 411 A.2d 42 (1979). "The question whether additional testimony should be taken calls for an exercise of the court's legal discretion. *Tarasovic* v. *Zoning Commission,* [147 Conn. 65, 69, 157 A.2d 103 (1959)]; *Hlavati* v. *Board of Adjustment,* 142 Conn. 659, 668, 116 A.2d 504 (1955). On the record before us, including the reasons claimed by the [plaintiff] for taking additional evidence, we cannot say that the court abused its discretion. The court also did not abuse its discretion in denying [the plaintiff's] motion for discovery and production." *Leib* v. *Board of Examiners for Nursing,* supra, 92–93.

## IV

In his final claim of error, the plaintiff argues that the commission's conduct in investigating and addressing his complaint was so procedurally flawed that he was denied due process of law as guaranteed by the fourteenth amendment to the United States constitution, and article first, § 10 of the Connecticut constitution. We will not review this claim of error, however, because it was not properly presented to the trial court. "If a party intends to raise any claim of law which may be a subject of an appeal, he must either state the same *distinctly* to the court before his argument is closed, or state it in a written trial brief. If this is not done, it will not be a duty of either the trial court or the appellate court to decide the claim." (Emphasis added.) Practice Book § 285A. The plaintiff's several references at oral argument before the trial court to the alleged lack of fairness and the absence of a hearing in the proceedings before the commission did not suffice to alert the trial court to this claim. Passing oral references to the rubric of a due process claim raised for the first time in a hearing on the merits of an administrative appeal,

even if repeated often, are not an adequate substitute for a clearly and distinctly articulated claim of constitutional error. Nor did the plaintiff raise this issue in his trial brief in the Superior Court.

There is no error.

In this opinion the other judges concurred.