[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Deborah A. Kalanquin appeals the dismissal by the defendant Commission on Human Rights Opportunities (Commission) of her complaint of discrimination against her employer Heublein Inc. Upon motion, Heublein was allowed to intervene as a defendant in this appeal on July 28, 1997. The appeal was brought pursuant to General Statutes § 46a-94a.
On June 10, 1996, the plaintiff filed her complaint with the CHRO alleging that Heublein gave her a poor evaluation, harassed her and did not provide her reasonable accommodation in part because of her physical disability and mental disorder in violation of General Statutes §§ 46a-58 (a), 46a-60 (a)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Civil Rights Act of 1991 and American With Disabilities Act,42 U.S.C. § 12101 et seq. On July 8, 1996, the plaintiff filed an amended complaint adding allegations of discrimination and harassment and a claim of constructive discharge. On July 30, 1996, the plaintiff requested that the CHRO default Heublein for failing to answer the interrogatories in Schedule A. On August 16, 1996, Heublein filed a response to the complaint and to Schedule A. On October 7, 1996, the CHRO dismissed the plaintiff's complaint as amended on the ground that there was no reasonable possibility that further investigation would result in a finding of reasonable cause. General Statutes § 46a-83 (b). On October 22, 1996, the plaintiff filed a request for reconsideration, which was denied on December 20, 1996. This appeal followed on January 31, 1997.
The defendant Heublein argues that the plaintiff's appeal is untimely because it was filed more than forty-five days after the § 46a-83 (b) dismissal. General Statutes § 4-183 (c). As this attacks the claim of subject matter jurisdiction, the court must address it prior to considering the merits of the plaintiff's appeal. Figueroa v. CS Ball Bearing, 237 Conn. 1, 4
CT Page 1531 (1997); Glastonbury Volunteer Ambulance Association Inc. v. FOIC,227 Conn. 848 (1963). The defendant CHRO joins the plaintiff in opposing to this jurisdictional attack. The facts are not in dispute. The plaintiff filed a request for reconsideration within fifteen days of the initial dismissal but did not file an appeal until after the request for reconsideration was denied. The appeal was filed within forty-five days of the denial of reconsideration. General Statutes § 46a-83a reads,
 Right of appeal by complainant. If a complaint is dismissed pursuant to subsection (b) or (c) of section 46a-83, or if a reconsideration of a dismissal as provided in subsection (e) of section 46a-83 is rejected, the complainant shall have a right of appeal pursuant to section 46a-94a. The provisions of subsection (j) of section 4-183 shall apply to any appeal pursuant to this section.
The language of the statute clearly authorizes this appeal. Accordingly, the court declines to dismiss the appeal for lack of subject matter jurisdiction.
In her appeal, the plaintiff raises a number of issues. The first group of issues are categorized as procedural irregularities. The remaining issues concern the correctness of the CHRO's findings and conclusions in its final decisions.
The scope of the court's review of an agency's decision is very limited. Under General Statutes § 4-183 (j), "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record."
Furthermore, "[j]udicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, legally, or in abuse of discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl. 219 Conn. 51, 57-58 (1991). "Ultimately, [t]he question is not whether the trial court would have reached the same conclusion but whether the record before the [agency] supports CT Page 1532 the action taken.'" (Citations omitted.) Miko v. Commission onHuman Rights Opportunities. 220 Conn. 192, 201 (1991).
The plaintiff raises four procedural violations which she claims affect the validity of the CHRO decisions. In order to obtain a reversal of the agency decision on this basis, the plaintiff must demonstrate prejudice. "Even a demonstration of procedural irregularities would not require us to set aside the board's decision in the absence of a showing of material prejudice. Jutkowitz v. Dept. of Health Services, 220 Conn. 86,97, 596 A.2d 374 (1991); Murach v. Planning Zoning Commission,196 Conn. 192, 205, 491 A.2d 1058 (1985)." Anziano v. Board ofPolice Commissioners, 229 Conn. 703, 713 (1994).
As to the claimed procedural irregularities, the court looks first to the statute setting forth the procedure to be followed by the CHRO in processing a complaint. Under General Statutes (Rev. to 1994) § 46a-83 (b),
 Within ninety days of the filing of a complaint, the executive director or his designee shall review the file. The review shall include the complaint, the respondent's answer and the responses to the commission's requests for information, if any, and the complainant's comments, if any, to the respondent's answer and information responses. If the executive director or his designee determines that the complaint fails to state a claim for relief or is frivolous on its face, or there is no reasonable possibility that investigating the complaint will result in a finding of reasonable cause, the complaint shall be dismissed.
The plaintiff first argues that the dismissal of October 7, 1996 was untimely because it was issued more than ninety days from the filing of the complaint. The plaintiff filed an amended complaint adding a new claim on July 8, 1996. Heublein filed its answer pursuant to permission of the CHRO on August 16, 1996. The CHRO's dismissal was within ninety days of the filing of the amended complaint. See Public Act 96-241 § 2(b). Therefore, the dismissal was not untimely. Finally, the plaintiff has demonstrated no material prejudice as a result of the alleged violation. Anziano v. Board of Police Commissioners, supra,229 Conn. 713. CT Page 1533
The plaintiff next argues that the CHRO erred in not granting its motions for default. The court has carefully reviewed the record and finds only one motion for default: the July 30, 1996 request for default made pursuant to § 46a-54-73 of the Regulations of Connecticut State Agencies as to interrogatories. (Return of Record (ROR), 267.) That motion was denied by the CHRO in its letter to Heublein on August 7, 1996. (ROR, 360B.) Responses to the interrogatories were filed on August 16, 1996. On August 29, 1996, the plaintiff renewed her motion for default as to the interrogatories, claiming that many were left unanswered. As noted by this court (McWeeny, J.) in Truglia v.Connecticut Commission on Human Rights Opportunities. Superior Court, judicial district of Hartford/New Britain at Hartford, Doc. No. 554068 (April 7, 1997):
 General Statutes § 46a-83 (i) provides that the CHRO "may" default respondents who fail to answer under oath or who fail to answer interrogatories. Therefore, the decision whether to default parties is committed to agency discretion. An agency's discretionary determinations are to be accorded considerable weight by the courts. Board of Administration v. Bridgeport Community Television Co., 168 Conn. 294, 298-99 (1975); Connecticut Hospital Assn. v. Commission on Hospitals and Health Care. 200 Conn. 133, 140 (1986); State Medical Society v. Board of Examiners in Podiatry, 208 Conn. 709, 777 (1988). Furthermore, since an employer, through its attorney, did file an answer under oath and did answer interrogatories, the CHRO did not abuse its discretion in accepting these answers and not defaulting the individual partners of the employer partnership individually.
Here, Heublein provided responses to the interrogatories after the denial of the request for default. The court will not disturb this ruling.
The third procedural error raised is that the CHRO should have defaulted Heublein for failing to plead to more than one half of the plaintiff's allegations in her complaint. In fact, Heublein did respond to these allegations by alleging that the claims were untimely in light of the 180 day period for CHRO claims under § 46a-82 (e). (ROR, 313-320.) It erroneously CT Page 1534 used the date of December 13, 1995 as a cutoff date when, under § 46a-54-34 of the Regulations of Connecticut State Agencies, it should have been December 12, 1995. The plaintiff raised the issue of the miscalculation of the 180 day period late in this appeal and did not raise it at all before the agency. Levinson v.Board of Chiropractic Examiners, 211 Conn. 508, 536 (1989);Jutkowitz v. Department of Health Services, 220 Conn. 86, 95
(1991). The discretion allowed to the agency in determining whether to grant a default for failure to plead is "accorded considerable weight." Accordingly, the court rejects this claim.
Finally, the plaintiff argues that the CHRO should have granted the plaintiff's motion to strike Heublein's position letter because the letter contained legal argument. The position letter was filed on August 16, 1996. (ROR, 303-10.) The plaintiff had the opportunity to respond to that letter. There is no statutory provision restricting the parties to a CHRO proceeding from submitting legal argument even during a merit assessment review. Clearly, a large part of the CHRO's role at this stage is to determine legal issues as well as factual. The court finds no merit in this argument.
In addition to the specific procedural irregularities, the plaintiff also claims that the CHRO failed to perform a thorough investigation as required under Adriani v. Commission on HumanRights Opportunities, 220 Conn. 307 (1991) and Ierardi v.Commission on Human Rights Opportunities, 15 Conn. App. 569, cert. denied, 209 Conn. 813 (1988). As noted by the defendants in their briefs, subsequent to those decisions, General Statutes § 46a-83 was amended in 1994 to provide for a merit assessment review in lieu of an investigation. It is the amended statute that governs this case, and accordingly, the court rejects this claim.
The court now turns to the findings of the CHRO in its decisions. The plaintiff claims that the CHRO's findings that 1) it had no jurisdiction, 2) there was no pattern of discriminatory conduct, 3) Heublein had no duty to accommodate the plaintiff for her disability, 4) she was not constructively discharged, 5) that the plaintiff had no retaliation claim and 6) Heublein's reasons for its actions were not discriminatory, were erroneous as a matter of law and arbitrary based on the evidence in the record.
The record reflects the following facts. The plaintiff was employed by Heublein from 1980 through 1986. In July 1990, she CT Page 1535 returned to Heublein as temporary employee until May 1991 when she was assigned to a full time position in the legal department with Attorney Cecily Isbell as her immediate supervisor. On December 13, 1995, the plaintiff suffered a severe anxiety attack and left work. She has been on disability leave since that day until June 1996 when she was placed on family/medical leave while her long term disability benefit application was pending.
In her complaint, the plaintiff alleges that beginning in 1992 she was subjected to an "increasingly hostile work environment" by Isbell. She further alleges that although she informed Heublein of the hostility and requested a transfer, Heublein did nothing. She alleges that in April 1994, Isbell threatened her continued employment in an unprovoked outburst. At that time the plaintiff was diagnosed with fibromyalgia and anxiety disorder "caused by Isbell's hostile work conditions." (ROR, 102.) From January 1995 through May 1995, the plaintiff took short term disability leave. Upon her return in May 1995, the hostile work environment continued. She requested a transfer of assignments. While not every allegation is dated, the court infers that all of these events took place prior to December 12, 1995. On December 12, 1995, the plaintiff received her performance appraisal, which described her performance as "inconsistent" and in some areas "unsatisfactory." This was in "complete contrast" to her prior appraisals.
Since December 13, 1995, her last day at work, the plaintiff alleges that she requested another position from Heublein, and none was offered. When her short term disability benefits expired, she applied for long term disability benefits and again requested another position. Heublein did not respond and placed her on family/medical leave. The plaintiff alleges that there were available job openings that were filled by outside persons. The plaintiff claims that this conduct by Heublein is further harassment and that by failing to transfer her to another position even though Heublein knows of the hostile work environment under Isbell, Heublein has constructively discharged her. (ROR, 105.)
Heublein alleged in response that most of the alleged acts of harassment that occurred prior to December 13, 1995 are untimely under § 46a-82. As to those acts after December 13, 1995, Heublein noted that December 13, 1995 was the last day of plaintiffs active employment, that she had been on paid disability leave until June 14, 1996, and, that as of the CHRO CT Page 1536 proceeding, she has been on Family and Medical Leave (FMLA). The plaintiff's doctors stated that during this period she was totally disabled and will be so for an undetermined period of time. As to the claim of constructive discharge, Heublein notes that she has not resigned and remains on FMLA. (ROR, 303-360.)
"In determining whether a complaint of discrimination in employment is supported by reasonable cause, the CHRO is not limited to determining whether the complainant can make a prima facie case. Rather, the CHRO must look at the preliminary information as a whole in assessing whether reasonable cause, as defined in General Statutes § 46a-83 (b) is or is not present." Cohen v. Connecticut Commission on Human Rights Opportunities, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 549621 (March 1, 1996, Hodgson, J.).
The CHRO made the following statements in the notice of merit assessment dismissal:
 You have stated that you were harassed, given a poor evaluation, not reasonably accommodated and constructively discharged by [Heublein] based on your physical disability. The issues of harassment mentioned in your complaint are untimely. That is the incidents of harassment have taken place more than 180 days prior to your filing of the complaint, thereby making such issue nonjurisdictional for review by the Commission. You then state that you were given a poor evaluation on December 13, 1996. Furthermore, your complaint states not that you were harassed due to your disability, but rather, that you became disabled due to the alleged harassment.
(ROR, 7.) (Emphasis in original.)
Then, in its decision rejecting the reconsideration, the CHRO commented in part as follows:
 4. The complainant stated that the incidents of harassment which occurred more than 180 days prior to the filing of the complaint were the cause of her disability, not because of her disability. Complainant's doctor stated that the complainant's onset of disability occurred on December 14, 1995. CT Page 1537 Since the harassment was not based upon a protected class basis, the Commission has no jurisdiction to investigate it. In a like manner, the Commission cannot investigate every employee's termination, but only those which are alleged to be based upon a protected class basis.
(ROR, 5.)
While the plaintiff argues that the CHRO's findings that it had no jurisdiction were contrary to the law and evidence, the court finds other vise. The plaintiff claims that the CHRO incorrectly found she was not within the protected class and did not apply the pattern of discriminatory conduct theory to the acts occurring outside the 180 day period. As to the former claim, there is substantial evidence to support the finding that the plaintiff's disability as of December 14, 1995 was total. Accordingly, she would not be a "qualified individual with a disability" under the Americans with Disabilities Act to support a discrimination claim subsequent to December 14, 1995. As to the claim that the CHRO should not have ignored those claims outside the 180 day period under a pattern of discriminatory conduct theory, the record shows that the CHRO did look at the merits of those claims of discriminatory acts prior to December 13, 1995, including the poor performance review:
 When you returned to work, your work environment had not changed, and you mentioned that you believe you were given this poor evaluation because you complained of harassing conduct after your return. However, the information in the investigative file shows that on December 14, 1996 (sic), just one day after you received your evaluation, your physician requested that you be approved for leave because your symptoms were "disabling in terms of performing the duties and responsibilities of [your] job." In light of this request from your physician, it shows that respondent was appropriate in issuing a poor evaluation because when they believed you to be released to perform the essential functions of your position you were, in fact, not capable. They had no way of knowing that your performance level decreased due to the existence of your disability [sic] because you were released to return to work. Respondent reasonably CT Page 1538 assumed you were just not meeting the expected standards of performance.
(ROR, 37.) The record supports the CHRO's finding that the alleged harassment was not because of the plaintiff's disability. As to the performance review, the record shows there is evidence to support the CHRO's finding.
The remaining claims of error are similarly disposed of through a review of the record. As noted earlier, this court's review is limited and the CHRO's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Huck v. Inland Wetlands Watercourses Agency. 203 Conn. 525, 539-540 (1987). Further, "the credibility of the witnesses and the determination of factual issues are matters within the province of the administrative agency." (Citations omitted; internal quotation marks omitted.) Id., 540-541.
Here, there was evidence to support the finding there was no duty to accommodate because the plaintiff was totally disabled. (ROR, 347, 349, 351, 359.) There is also evidence to support the CHRO's finding that the plaintiff was not constructively discharged because she remained on FMLA leave and did not submit a resignation. The record contains evidence that, as of the filing of the amended complaint, the plaintiff was on FMLA and applying for long term disability benefits (ROR, 365). Finally, the complaint to the CHRO did not raise a retaliation claim as to the application for long term disability. While there are specific statutory violations alleged in her complaint, the provision as to retaliation is not. General Statutes § 46a-60
(a)(4). Accordingly, the CHRO was correct in not addressing it. See West Hartford v. Commission on Human Rights Opportunities,176 Conn. 291, 296-97 (1978).
The plaintiff's final claim is that the CHRO improperly dismissed her complaint by performing an adjudicative function in deciding that Heublein's motives were nondiscriminatory. While the plaintiff cites Adriani v. Commission on Human Rights Opportunities. supra, 220 Conn. 322, note 14 (1991), in support of the argument, the court does not read Adriani to say that CHRO cannot look to the reasons proffered by Heublein during this preliminary stage to see if a discriminatory motive played a role in its treatment of the plaintiff as an employee. See Ierardi v.Commission on Human Rights Opportunities, supra,15 Conn. App. 579-581. CT Page 1539
The plaintiff has not met her burden under General Statutes § 4-183 (j) to show that the actions of the CHRO in dismissing her complaint under § 46a-83 (b) were procedurally or substantively flawed.
The appeal is dismissed.
DiPentima, J.