[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION I. NATURE OF THE PROCEED WIGS
The plaintiffs, Charter Development Corporation (Charter) and Beverly Fagan, appeal the decision of the defendant Clinton Inland Wetland and Conservation Commission to deny their application to conduct a regulated activity.
 II. FACTS
The record reveals the following facts. The subject property is located at 2 Long Hill Road in Clinton, Connecticut and is owned by the plaintiff, Beverly Fagan. (Return of Record [ROR], Item 1; Exhibit 1.) The application at issue sought permission to construct "a public road adjacent to two isolated wetland areas." (ROR, Item 1.) The application further states that [d]rainage will be discharged to one wetland area and to one detention basin. The road is being constructed to provide frontage for a future subdivision and to interconnect adjoining parcels of land." (ROR, Item 1.) Specifically, the applicant, Charter, requested permission to deposit thirteen cubic yards of material over .006 acres of the 7.89 total acreage of the subject parcel.[1]
On January 26, 2000, Charter submitted its Site Plan Application for the subject property (ROR, Item 1.) Charter intends to build a residential subdivision on an adjacent parcel. (ROR, Item 1C.) The proposed road on the subject property is being constructed to connect the adjoining parcels and provide frontage for a proposed subdivision.[2]
(ROR, Item 8.)
The public hearing on the application was set for March 14, 2000 and was held on that date (ROR, Items 3, 7, 15.) At the hearing, there were no public comments in support of the application, although several residents spoke in opposition. (ROR, Item 15.) CT Page 6944
The commission considered the application at their monthly meeting on April 4, 2000 and voted unanimously to deny the application. (ROR, Items 17, 18.) There is no transcript of this meeting; the minutes of the meeting are a part of the record. Legal notice of the commission's decision was published in the Clinton Recorder on April 11, 2000. (ROR, Item 20.)
On April 28, 2000, after timely service of process, the plaintiffs filed the present appeal pursuant to General Statutes § 22a-43, claiming that in denying the application, the commission acted arbitrarily, capriciously, unlawfully, and in abuse of its discretion in that (1) the commission failed or refused to follow the mandates of General Statutes § 22a-41 and § 22a-42a (d)(1); (2) the commission failed or refused to follow the mandates of its own regulations; (3) the commission exceeded its authority; (4) the commission's decision constitutes the equivalent of a taking without compensation; (5) the commission failed to state its grounds for denial in the record; and (6) of the last seventy applications to the commission, only four were denied, three of which were made by the present applicant. (Plaintiffs' Appeal, p. 4.)
On October 24, 2000, the commission filed its answer (#105). The plaintiffs' filed their brief on November 20, 2000 (#106); the commission filed its brief on September 5, 2001 (#112) following numerous extensions. Oral argument was heard by the court on February 27, 2002. This court has carefully considered the testimony and evidence contained in the entire record, the parties briefs and their oral arguments.
 III. JURISDICTION
Appeals from a decision of inland wetland commission may be taken to the superior court. General Statutes § 22a-43 (a). "Appeals to courts from administrative agencies exist only under statutory authority. . . . A statutory right to appeal must be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . . Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal. . . ." (Citations omitted; internal quotation marks omitted.) Office of Consumer Counsel v. Department of Public UtilityControl, 234 Conn. 624, 640, 662 A.2d 1251 (1995).
 A. Aggrievement
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning and ZoningCommission, 219 Conn. 303, 307, 592 A.2d 953 (1991); DiBonaventura v.Zoning Board of Appeals, 24 Conn. App. 369, 373, 588 A.2d 244, cert. CT Page 6945 denied 219 Conn. 903 (1991). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Connecticut Resources Recovery Authority v. Planning Zoning Commission, 225 Conn. 731, 739 n. 12, 626 A.2d 705 (1993).
An owner of property which forms the subject mailer of the application to the commission is aggrieved. Winchester Woods Associates v. Planning Zoning Commission, supra, 219 Conn. 308. The plaintiff, Beverly Fagan, is the record owner of the subject property. (Plaintiffs' Exhibit 1.) Accordingly, this court finds that the plaintiffs are aggrieved.[3]
 B. Timeliness and Service of Process
General Statutes § 22a-43 (a) provides that timeliness of appeals from inland wetland commissions is governed by General Statutes § 8-8
(b), which requires that an appeal from a decision of a commission "shall be commenced by service of process [on the chairperson of the board and the clerk of the municipality] within fifteen days from the date the notice of the decision was published. . . ." See General Statutes §§ 8-8
(b), (e) and (f).
On April 4, 2000, the commission voted unanimously to deny the plaintiffs' application. (ROR, Item 17.) Legal notice of the commission's decision was published in the Clinton Recorder on April 11, 2000. (ROR, Item 20.)
This appeal was served on Co-chairperson Edward Limoncello and on Karen Lee Marsden, Town Clerk, on April 20, 2000. (Sheriff's Return of Service.) Accordingly, the court also finds that the appeal was timely served on the appropriate parties.
Consequently, since this court has found that the plaintiffs are aggrieved and that this appeal was timely served on the proper parties, this court has jurisdiction.
 IV. SCOPE OF REVIEW
"While distinctions exist, the decision as to whether or not to grant a permit to conduct regulated activities would be analogous to the test applied to special permits, where the agency issuing them must determine if the proposal meets existing regulations and conditions designed to protect public health and safety. In addition, because of the public interest in protecting wetlands and watercourses, the inland wetlands agency has more discretion and flexibility as to the content of its regulations than the discretion allowed a zoning commission when CT Page 6946 providing for special permits in the zoning regulations. As a result, the inland wetlands agency, even though it is acting in an administrative capacity when reviewing regulated activities permits, will not be held to as strict a standard as the agency reviewing special permits. Since the test for judicial review of factual decisions of an administrative agency under section 4-183 (j) is similar to the standard for zoning appeals under section 8-8, standards developed for wetlands appeals using the substantial evidence rule may still be applied to inland wetlands appeals. In addition, the general concepts of judicial review for administrative appeals would continue to apply . . ." R. Fuller, 2 Connecticut Practice Series: Land Use Law and Practice (1993) § 33.9, p. 581-2.
"In granting, denying or limiting any permit for a regulated activity the inland wetlands agency . . . shall consider the factors set forth in section 22a-41, and such agency . . . shall state upon the record the reason for its decision." General Statutes § 22a-42a (d)(1). "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Huck v.Inland Wetlands Watercourses Agency, 203 Conn. 525, 539-540, 525 A.2d 940
(1987).
"Where the agency fails to give reasons for its actions, the court has to search the record to determine if there are valid reasons supported by substantial evidence which will reasonably support the agency's decision." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 33.9, p. 582-3; see also Kaeser v. ConservationCommission of Town of Easton, 20 Conn. App. 309, 311-12, 567 A.2d 383,384 (1989). "It is the burden of the plaintiff challenging the administrative action to establish that the record does not support the action of the agency." Laufer v. Conservation Commission,24 Conn. App. 708, 715, 592 A.2d 392 (1991).
"When the court reviews decisions of land use agencies under section 8-8, it cannot substitute its discretion for the evidentiary findings of the agency if they are reasonably supported by the record." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1993) § 33.9, p. 584. "On appeal from the final order of an administrative agency . . . the trial court does not try the case de novo. It is not the function of the court to adjudicate the facts. The court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence." Persico v. Maher, 191 Conn. 384,408-09, 465 A.2d 308 (1983). "Substantial and competent evidence is that which carries conviction. It is such evidence as a reasonable mind might accept as adequate to support a conclusion. It means something more than CT Page 6947 a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." (Internal quotation marks omitted.) Board of Education v. Commission on Human Rights, 176 Conn. 533,538, 409 A.2d 1013 (1979).
 V. DISCUSSION
On appeal, the plaintiffs claim that "the Commission acted arbitrarily, capriciously, unlawfully, and in abuse of its discretion in one or more of the following ways: (a) The Commission failed or refused to follow the mandates of the Connecticut General Statutes § 22a-41
and § 22a-42a (d)(1); (b) The Commission failed or refused to follow the mandates of its own regulations; (c) The Commission, in making said decision, exceeded its authority; (d) The Commission's decision constitutes the equivalent of a taking of the Plaintiffs' property without compensation; (e) The Commission failed to state its grounds for denial in the records of the Commission. (f) Of the last seventy (70) applications presented to the defendant Commission only four (4) were denied, three (3) of which were applications filed by Charter Development Corp." (Plaintiffs' Appeal, p. 4.)
Of these claims on appeal, the second, third and sixth were not briefed by the plaintiffs and are, therefore, deemed abandoned. Ierardi v.Commission on Human Rights and Opportunities, 15 Conn. App. 569, 585,546 A.2d 870, 879 (1988), cert. denied 209 Conn. 813, 550 A.2d 1082.
As to the claim that the commission failed to state its grounds for denial in the record, the court has previous noted, supra. that this is not a ground for sustaining an administrative appeal. In such a situation, the court must review the record to determine if the commission's decision is supported by substantial evidence. In this case, while the commission did not elaborate on the record its reason for denying the application, the motion to deny the application states that it should be denied "due to the high impact on the wetlands on the site." (ROR, Item 18, p. 5.)
 A. Six Factors of General Statutes § 22a-41
The plaintiffs claim that the commission failed to consider the six factors enumerated in General Statutes § 22a-41[4], which the commission is required to consider by General Statutes §22a-42a (d)[5]. The plaintiff seeks a remand of this matter to the commission for consideration of these factors. (Plaintiffs' Brief, p. 14.) The commission concedes that it did not cite to the statute in denying the application, but argues that its reasoning is evident and can be applied to the six factors. (Defendant's Brief, p. 4.) CT Page 6948
There is no transcript of the commission's April 4, 2000 regular meeting at which the commission denied the application. The minutes of the meeting (ROR, Item 18) do shed some light on the particular concerns of commission members. Commissioner Holland expressed concern for existing wetlands areas and migratory amphibian access to the vernal pool under the proposed plan, and she proposed an alternative plan, not addressed by the applicant. (ROR, Item 18, p. 5.) Commissioners Picard and Zamecnik also raised concerns regarding amphibian access. (ROR, Item 18, p. 5.) Finally, Commissioner Limoncelli voiced his concerns "that the majority of the proposed development is within 50 feet of the wetlands and all is within 100 feet of the wetlands, especially the proposed road going through the wetlands . . . His opinion was a driveway would be preferable over a road." (ROR, Item 18, p. 5.)
The commissioners' concerns are supported by substantial evidence in the record of the public hearing on the application. There is extensive evidence from Richard Snarski, Soils and Wetlands Scientist, the applicant's expert witness, that the reptile and amphibian population in the wetland area will be greatly adversely impacted by the proposed development. In particular, silt fencing and road curbing, both a major part of the proposed plan, can block the creatures from migrating to their breeding grounds in the vernal pools.[6] (ROR, Item 21, pp. 52-56. 59-60.) Furthermore, Snarski was not able to rule out the possibility that the area in question may contain endangered species. (ROR, Item 21, p. 65.) Finally, and most convincing is Snarski's comment that "[a]ny time you do anything . . . within the proximity of the vernal pool you impact it to some extent, even within 800 feet of a vernal pool. That's the problem with vernal pools." (ROR, Item 21, p. 67.)
Snarski goes on to discuss a recent study by a Massachusetts researcher in which the researcher installed a complete silt fence one thousand feet around a vernal pool and removed twenty percent of the woodland area. As a result, the researcher observed an eighty percent decrease in the amphibian population during the two year study(ROR, Item 21, pp. 68-9.) While Snarski labels the study inconclusive, he does go on to describe the problem of balancing landowners interests with environmental concerns. He states, "what we try to do, is just try to . . . [a]llow people to have land use of their property and then try to hold . . . We want to hold up near the hundred foot buffers. And then beyond that you'll want to allow corridors for critters get across." (ROR, Item 21, p. 69.) As Commissioner Limoncelli noted, the proposed development is all within 100 feet of the wetlands.
Furthermore, there is substantial evidence of the high impact of this proposed development on the wetlands apart from the impact on migratory CT Page 6949 amphibians. The proposed development could require under two alternatives, retaining walls inserted into the ground two and a half feet and extending upward several feet depending on the alternative. (ROR, Item 21, p. 24.) Silt fences must be installed at the wetland boundary. (ROR, Item 21, p. 25-26.) The proposal also calls for the relocation of a water line. (ROR, Item 21, p. 27.) Finally, a man-made retention pond must be created to accommodate the volume of water that the wetlands can no longer accommodate due to the filling in of a portion of the wetlands. (ROR, Item 21, p. 40-42.)
The commissioners were clearly concerned about the filling in of a portion of the wetlands. The applicant's engineer, Mr. Stevens, pointed out several instances in the past in which the commission, then consisting of almost entirely different individuals, did approve wetland filling. (ROR, Item 21, p. 48-50.) Commissioner Limoncelli then noted that those prior instances involved filling smaller portions of the total wetlands than the present proposal. He states of the present proposal, "fifty percent of it is in, encroaches wetlands." (ROR, Item 21, p. 50.) He later states that the "actual filling" is even more problematic to the commission that the encroachment. (ROR, Item 21, p. 51.)
The court finds that the aforementioned evidence does substantially fulfill the six factors set forth in General Statutes § 22a-41 (a). First, the impact of the proposed development on this particular environment is substantial. The proposal requires much alteration of the natural environment, and the evidence shows that this development will be to the peril of the local amphibian population. Second, the applicant's purpose, so far as can be determined presently, is simply to install a road through the subject property to reach another road on an adjacent parcel. The applicants cannot point to any other specific plans for the subject parcel. Third, the evidence indicates that both the long and short term impact of the proposal is grave, especially for the amphibian population. Also, although Snarski described in detail the plan to plant native, wetland foliage around the retention pond and to replant where necessary, such activity does not "maintain" and certainly does not "enhance" the long-term productivity of this environment. Fourth and fifth, this is a relatively small parcel of land and the wetlands area is also small, but the proposal contemplates development directly through the wetlands area, resulting in irreversible and irretrievable losses to the health of this environment, even with the mitigation efforts proposed. Finally, there is evidence that this proposal will adversely impact adjacent land. For example, the adjacent Rice and Manley properties will experience a change in groundwater. (ROR, Item 21, p. 100, 104.) In fact, it seems that Mr. Manley's wetlands are included in the 100 foot radius surrounding the wetlands on the subject property and the substantial evidence is that his wetlands will also be affected by CT Page 6950 reason of it being within the one hundred foot range of the subject wetlands. (ROR, Item 21, p. 99.) More troubling is the fact that the applicant was unaware of the proximity of the Manley wetland to the proposed development. (ROR, Item 21, p. 104.) This proposed development clearly will affect wetlands that are not located on the subject property.
The court is satisfied that, although the commission did not explicitly address these six factors in light of the evidence in denying the application, substantial evidence exists in the record as to each of the six factors, which indicates that the commission was aware of the factors and did consider them in their analysis of the instant application. "[T]he statute does not require an inland wetlands agency explicitly to specify the factors that it has utilized in its evaluation of an application. As long as a search of the entire record reveals the basis for the agency's decision and supports reasonable inferences that the agency adhered to the factors enumerated in 22a-41 (a), then the argument that the agency failed to apply the proper statutory criteria must be rejected." Samperi v. Inland Wetlands Agency, 226 Conn. 579, 598,628 A.2d 1286 (1993). Substantial evidence exists to justify the commission's denial of the application. Having so found, this court will not disturb the decision of the commission.
The plaintiff also argues that General Statutes § 22a-41 (b) requires the commission to make findings regarding alternatives. Nevertheless, the statute states, "a permit shall not be issued unless the commissioner finds on the basis of the record that a feasible and prudent alternative does not exist." The plain language of this section requires the commission to consider and rule out alternatives only if they are actually issuing a permit for the proposed regulated activity. In the present case, the commission did not issue a permit and, therefore, did not need to address alternatives.
 B. Takings Claim
The sole remaining claim on appeal is that the commission's decision constitutes the equivalent of a taking of the plaintiffs' property without compensation. "[I]f an aggrieved party claims that the action appealed from constitutes a taking, and offers relevant evidence to support that claim, the trial court must hear the evidence to enable it to make an informed decision." Cioffoletti v. Planning ZoningCommission, 209 Conn. 544, 550, 552 A.2d 796 (1989), rev'd on other grounds, 245 Conn. 551, 581-2, 714 A.2d 46 (1998). This type of claim presents a constitutional issue that an administrative agency is not equipped to address and, therefore, this claim must be tried de novo before this court. Id., 551. CT Page 6951
"As an analytic matter, before a court can review a landowner's claim that he has been deprived of his property without just compensation, the court must first define the property interest that has allegedly been taken." Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404,410, 593 A.2d 1368 (1991). The plaintiffs claim that they both have an investment based expectation of developing the subject property. (Plaintiffs' Brief, p. 9.)
"[A] landowner, who purchased property with a reasonable expectation of residential or commercial development, has suffered a taking if regulatory constraints allow him to use his land only in its natural state without any economically viable alternative use thereof. While the state is unquestionably entitled to protect wetlands from potentially harmful development, it is not entitled to impose the entire cost of such protection, upon a landowner who purchased property with the reasonable expectation of developing it for residential or business purposes." Gilv. Inland Wetlands Watercourses Agency, supra, 219 Conn. 414.
The court cannot find, based upon the evidence before it that the plaintiff, Mrs. Fagan, purchased the property with an investment based expectation in the development of the property. Mrs. Fagan acquired the property by quit claim deed in 1967, approximately 30 years before any proposals for development were brought before this commission.[7]
(Exhibit 1.) While Mrs. Fagan may have purchased the property as an investment in 1967, it has not been proven that she purchased it with an investment based expectation in the development of the property. Mrs. Fagan may have more recently developed an investment based expectation of the development of the property, but this does not meet the standard.
Charter Development Corporation does not own the subject property, but apparently has "entered into a contract under which, upon regulatory approval, Fagan will sell said real property to" it. (Plaintiffs' Appeal, p. 1.) While Charter entered into this contract with an investment based expectation in the development of the property, given the nature of its contract with Mrs. Fagan, it does not intend to be the owner if it is unsuccessful in gaining regulatory approval. Charter fails to meet the standard as well.
Moreover, "[t]o demonstrate the requisite finality, a property owner asserting a regulatory taking's claim bears the burden of proving the relevant government entity will not allow any reasonable alternative use of his property." Huck v. Inland Wetlands and Watercourses Agency, supra, 203 Conn. 553. It is abundantly clear from the record that there are economically viable alternatives that the commission might approve. The minutes of the April 4, 2000 regular meeting reveal that Commissioner CT Page 6952 Limoncelli stated that a driveway would be preferable to a road. (ROR, Item 18, p. 5.) Commissioner Holland also suggested that "access off Settler's Lane might be a better alternative." (ROR, Item 18, p. 5.) Certainly, a driveway might be a less lucrative alternative than the proposed road, but that is not grounds for a takings claim. Since there is substantial evidence in the record that there are other alternatives of development still open to the plaintiffs, they have not shown the requisite finality necessary to proceed with a takings claim.
 VI. CONCLUSION
In conclusion, the commission's decision to deny the plaintiffs' application to conduct regulated activity was not unreasonable, arbitrary or illegal and did not constitute a regulatory taking. Instead, the decision was reasonably supported by substantial evidence in the record. Accordingly, the plaintiffs' appeal is hereby ordered dismissed.
BY THE COURT
Brian Fischer Judge of the Superior Court